## ALEXANDER v. HAMILTON et al.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1923.)

No. 6091.

I. Specific performance ⊜⟶75—Contract to pay for land by sowing part to grain and delivering half of hay and grain crops held not specifically enforceable.

Where purchasers from plaintiff's assignor agreed to pay a mortgage on the premises, and to pay a large portion of the purchase price by delivery annually of one-half of all grain and hay crops raised and harvested from the premises, at market prices, until such portion was paid, and to sow annually a specified acreage in wheat, *held*, that such contract would not be specifically enforced, as it would involve for a considerable period of time the supervision by the court of farming operations and the ordering that defendants specifically provide the funds to pay taxes and interest.

2. Specific performance ⊜⟶8—Not granted as of right.

Specific performance of a contract by a court of equity is not a matter of absolute right, but rests in the sound discretion of the chancellor.

3. Equity ⊜⟶90—All persons materially interested should be made parties.

Generally, in equity, all persons materially interested, either legally or beneficially, in the subject-matter of the suit, are to be made parties, and when it appears that necessary and indispensable parties are beyond the jurisdiction of the court, it would be useless to grant leave to amend.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by F. A. Alexander against Thomas J. Hamilton and others. Judgment of dismissal, and plaintiff appeals. Affirmed.

Joseph N. Moonan, of Waseca, Minn. (R. J. Madden, of Omaha, Neb., and Moonan & Moonan, of Waseca, Minn., on the brief), for appellant.

Charles E. Abbott, of Fremont, Neb. (Abbott, Rohn & Robins, of Fremont, Neb., on the brief), for appellees.

Before KENYON, Circuit Judge, and SYMES, District Judge.

SYMES, District Judge. In December, 1917, two of the defendants, appellees here, Thomas J. Hamilton and Roy J. Scott, agreed in writing to purchase from one Chambers and his wife a tract of land in Montana for the sum of $52,500. Seven thousand dollars was paid down, and a $20,000 note, secured by a mortgage on the property in question, was contemporaneously executed. The note was signed by Chambers and his wife, Hamilton alone, and Scott and his wife. The $20,000 mortgage which secured the same was executed by Chambers and wife, Hamilton and his wife, and Scott and his wife. A $1,500 note and mortgage was also executed by all the defendants. The proceeds of these mortgages went to Chambers, and by the contract in question defendants Hamilton and Scott assumed and agreed to pay the same. It was further agreed in the contract referred to that the balance of the purchase price, amounting to $25,000, should be paid as follows: One-half of all grain and hay crops raised and harvested

from the premises to be delivered at market prices to Frank C. Chambers annually, until this balance was paid in full, with interest at 6 per cent. and the taxes, payable in cash. In addition they specifically agreed to sow not less than 400 acres of the land in question in wheat every year until said amount was paid.

The defendants apparently complied with the terms of the agreement during the years 1918 and 1919, and thereafter refused further to perform. Chambers, a resident of Montana, assigned his interest in the contract to the plaintiff, Alexander, appellant here, a resident of Minnesota. Before this suit was filed the mortgagee had commenced an action of foreclosure in Montana on the $20,000 note and mortgage. It will be observed that the plaintiff was not a party to, nor is he obligated on the mortgages or notes. He is merely a creditor of Hamilton and Scott, holding the contract as security, with no personal obligation as to the incumbrances; and to protect his security he prays for specific performance, requiring the defendants, residents of Nebraska, to sow and farm the 400 acres of land situated in Montana, and to harvest, haul, and deliver the crops at the point designated. Plaintiff further prays the court to require the defendants to pay to the holders of the notes representing the mortgage indebtedness, what is due thereon in the way of principal and interest, and to pay the taxes, all of which it is alleged is in default. Judgment is also asked for $2,136 delinquent interest alleged to be due, and for $25,000 damages. Defendants Hamilton and Scott filed a motion to dismiss, and the other defendants, Maggie Wilson Hamilton and Ethyl Maude Scott, filed similar motions separately.

In general the grounds of the motions were failure of the complaint to state a cause of action either in equity or at law, that the court was without jurisdiction to grant the relief sought, and on the further ground that it appeared on the face of the amended and supplemental complaint that the matter in controversy in the suit did not exceed, exclusive of interest and costs, the sum of $3,000; further, that there was a misjoinder of parties defendant.

[1] The court, without making specific findings on any of the grounds alleged, sustained the motions and dismissed the bill. The granting of a decree for specific performance of the contract in question will entail upon the court the supervision of the complicated operations involved in the farming and marketing of the crops to be raised in Montana on the 400 acres, under all the uncertainties and vicissitudes necessarily connected therewith. It means personal supervision of the activities of the defendants over an indeterminate period of time, and the assumption by the court of the business affairs of the defendants, carried on outside its jurisdiction. The decree asked for would also require the court to order the defendants to specifically provide the necessary funds to pay the taxes and the delinquent interest and other sums that it is alleged are due to third parties, strangers to this case.

[2] Courts of equity are not equipped with the necessary machinery to attempt such an undertaking, and in the absence of special and unusual circumstances—such, for instance, as where the public in-

terest is involved—we find no case where it has ever been attempted. Specific performance of a contract by a court of equity is not a matter of absolute right, but rests in the sound discretion of the chancellor. In discussing specific performance as applied to contracts of this class, Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, p. 3336, says:

"Finally, the contract must be such that the court is able to make an official decree for its specific performance, and is able to enforce its own decree when made."

Shubert v. Woodward, 167 Fed. 47, 92 C. C. A. 509, the leading case in this circuit, considers the wisdom of a court of equity undertaking the specific performance of a contract running over a series of years, and says (167 Fed. 54, 92 C. C. A. 516):

"The specific performance of a contract by a court of equity is not a matter of right. It rests in the discretion of the court, not in its arbitrary whimsical will, but in its sound judicial discretion, informed and directed by the established principles, rules, and practice of equity jurisprudence. Hennessey v. Woolworth, 128 U. S. 438, 442, 9 Sup. Ct. 109, 32 L. Ed. 500. Nor are these principles and rules and this practice hard, fast, or without exception. They are rather advisory than mandatory, and the application of the rules and of their exceptions to each particular case as it arises is still intrusted to the conscience of the chancellor."

On page 55 of 167 Fed., on page 517 of 92 C. C. A.:

"Courts of equity have no efficient means, and therefore will not ordinarily attempt, to constrain an individual to perform personal acts which require special knowledge and experience and the exercise of skill, discretion, and cultivated judgment"—citing cases.

And further, on page 56 of 167 Fed., on page 518 of 92 C. C. A.:

"But in the absence of such public interest, or such controlling equities, or of clear evidence that irreparable injury will probably result to the complainant if it withholds the relief sought, a court of equity does not constrain, and it ought not to compel, the enforcement of the specific performance of a contract which cannot be consummated by a speedy, final decree, but which involves the supervision of a continuous series of acts which must extend through a long period of time and which will require the exercise of special knowledge, judgment, and experience."

See, also, Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501, and Town of Laurens v. Northern Iowa Gas & Elec. Co. (D. C.) 262 Fed. 712.

The plaintiff further urges that he has a right to maintain this action to specifically compel the payments of the note and mortgages, because he occupies the position of a surety. Our attention has not been called to any obligation assumed by him as such, or any liability that he is under to pay the indebtedness on default by the defendants. Plaintiff did not give the mortgage, did not sign the notes, and has never assumed any personal liability to the holder thereof; and even if this could be held to be such an action, the relief prayed for could not be granted without making the creditor, to whom the money is admittedly owing, a party, so that the exact amount due could be determined. In the foreclosure suit begun in Montana, to foreclose the mortgage, the amount due thereunder can be properly determined.

[3] The general rule in equity is that all persons materially in-

terested either legally or beneficially in the subject-matter of a suit are to be made parties, and when it appears that necessary and indispensable parties are beyond the reach of the jurisdiction of the court, it would be useless for the court to grant leave to amend. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499. There being no grounds for equitable relief here, and the plaintiff not having moved to have it transferred to the law side, the bill was properly dismissed. Clinton v. Cochran, 247 Fed. 449, 159 C. C. A. 503. Even if such a motion had been made, it should not have been granted, because the primary relief sought was equitable, and the only matter included determinable at law was for an incidental money judgment for less than $3,000, the proper parties to determine which are not before the court. Further, the complaint itself specifically alleges that the notes and mortgages are in the hands of parties outside the jurisdiction of the lower court; and there is no allegation of payment or damages actually suffered by the plaintiff, or any claim of title or interest in the land in question.

For the reasons stated, the judgment of the lower court was right and is affirmed.