### ENGEMOEN v. REA et al.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1928.

Rehearing Denied June 13, 1928.

No. 7889.

1. **Injunction** ⊂⊃57—Decree enjoining breach of contract being in effect decree for specific performance, principles governing remedies are generally the same.

An injunction decree enjoining the breach of contract is in effect a decree for specific performance, and principles which govern the granting of both remedies are generally the same.

2. **Specific performance** ⊂⊃75—Court of equity will not ordinarily decree specific performance when it cannot dispose of matter by decree capable of present performance.

A court of equity will not ordinarily decree specific performance when it cannot dispose of matter in controversy by a decree capable of present performance.

3. **Injunction** ⊂⊃57—Equity court will not generally enjoin breach of contract requiring continuous supervision and direction in matters involved for long period.

Court of equity will not as a general rule enjoin breach of contract, where to render its decree effective it would have to give continuous supervision and direction to matters involved for a long period of time.

4. **Injunction** ⊂⊃94—Equity court will not ordinarily enjoin performance of duties involving exercise of skill, discretion, and judgment.

Court of equity will not ordinarily enjoin performance of duties which involve exercise of skill, discretion, and cultivated judgment.

5. **Injunction** ⊂⊃57—Equity will not generally enjoin breach of executory contract, where remedy is not mutual.

Generally, court of equity will not enjoin breach of contract which is executory on both sides, where remedy is not mutual, and in case obligation imposed by contract on plaintiff is of such nature that court could not specifically enforce it against him at instance of defendant,

court of equity will ordinarily deny injunctive relief to plaintiff against violation of contract by defendant.

6. **Injunction** ⊂⊃57—Specific performance ⊂⊃73—Equity will not directly enforce contract to render personal services by decree for specific performance, nor indirectly enforce contract by injunction restraining violation.

A court of equity will not directly enforce a contract to render personal services by decree for specific performance, and it will not indirectly or negatively enforce such contract by injunction restraining the violation thereof.

7. **Injunction** ⊂⊃57—Specific performance ⊂⊃8—Remedies of specific performance and injunction against breach of contract rest in sound discretion of court.

Remedies of specific performance and injunction against breach of a contract are not matters of right, but rest in the sound discretion of court, to be exercised, not arbitrarily, but according to settled principles of equity, and with reference to circumstances of individual case.

8. **Injunction** ⊂⊃57—Trial court properly dismissed bill to enjoin breach of contract for joint adventure requiring supervision for period of years of matters involving exercise of skill, discretion, and judgment.

Trial *held* to have properly dismissed bill to enjoin interference with prosecution of joint adventure for feeding hogs on island with garbage secured from city, pursuant to contract for its disposition, requiring protracted supervision and direction as to duties to be performed by parties extending over a period of years, and involving exercise of skill, discretion, and judgment, particularly where specific performance of contract on part of plaintiff could not be enforced, so that mutuality of remedy was wanting.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Harold E. Engemoen against Charles L. Rea and others. Decree of dismissal, and plaintiff appeals. Affirmed.

Glendy B. Arnold, of St. Louis, Mo., for appellant.

Xenophon P. Wilfley, of St. Louis, Mo. (Fred L. Williams and Earl F. Nelson, both of St. Louis, Mo., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an appeal from a decree sustaining a motion to dismiss, denying a temporary injunction, and dismissing the bill at plaintiff's costs, in a suit in equity brought by Harold E. Engemoen against Charles L. Rea, New St. Louis & Calhoun Packet Corporation, Stanley Rea,

Alexander Parkhurst, Frank Heckman, and the city of St. Louis.

The bill alleged: That Charles L. Rea, in the early part of 1925, became the owner of Establishment Island, situated in the Mississippi river in Randolph county, Ill., about 60 miles south of St. Louis, Mo., for the purpose of conducting on such island a hog-feeding farm, whereat he intended the fattening of hogs for market by feeding garbage gathered in the city of St. Louis and transported to the island; that on May 19, 1925, Charles L. Rea entered into a contract with the city of St. Louis, whereby the city agreed, for a period of five years from the date of the contract, to deliver to Charles L. Rea, on barges on the Mississippi river at the city's dock, all the garbage collected by such city daily, excepting Sundays and holidays; that Charles L. Rea agreed upon the delivery of such garbage to transport the same on the river to some point outside of the city and to there dispose of same in some manner not contrary to state or federal laws; that the city agreed to pay to Charles L. Rea, for the transportation and disposal of such garbage, 74 cents per ton.

That thereafter plaintiff and Charles L. Rea entered into a contract of joint adventure, under which it was agreed that the joint adventure should continue from July 1, 1925, to April 16, 1930; that under such contract and a contract supplemental thereto, entered into December 1, 1925, plaintiff agreed: (a) To furnish the necessary money to pay for, and to purchase, hogs in sufficient numbers to provide on such island, continuously during the life of the contract, except the last thirty days thereof, not less than 2,-500 nor more than 7,500 hogs; (b) to ship the hogs so purchased to St. Louis; (c) to exercise active supervision and control of the feeding operation on the island; (d) to keep records, books, and accounts of the joint adventure; and (e) to make all purchases and disbursements required in the conduct of the business. That under such contracts Charles L. Rea agreed: (a) To furnish land on such island for the feeding grounds; (b) to transport such hogs from St. Louis to the island; (c) to pay the costs in excess of 25 cents per head of transporting the hogs from the island to market; (d) to deliver to the feeding grounds on the island sufficient garbage to properly feed and fatten the hogs; (e) to provide other proper and necessary feed in the event the garbage delivered should be insufficient; and (f) on request of plaintiff to promptly remove such hogs to a place of safety in the event of high water on the river, making it unsafe to feed the hogs on the island. That under such contracts, it was further agreed that plaintiff and Charles L. Rea should pay equally the costs of (a) feed for the hogs in the event the river should be frozen over so that barges could not be moved thereon; (b) expenses incurred in prosecution of the enterprise such as feed for the hogs in transit and freight charges on hogs from points of purchase to St. Louis; (c) labor and material used in the construction of fences, feeding platforms, pens, sheds, and other structures on the island.

That it was further agreed under such contracts that, when the hogs were sold, there should be deducted from the amount received therefor, first, the purchase price, and, next, the expenses incurred in the feeding operations to be borne jointly by the parties, and that the remainder should be divided 45 per cent. to plaintiff and 55 per cent. to Charles L. Rea, and, in the event of losses, that the same should be shared equally.

The bill further alleged that on November 19, 1925, Charles L. Rea entered into a contract with the New St. Louis & Calhoun Packet Corporation, whereby the Packet Corporation agreed for 74 cents per ton to transport to the island all the garbage delivered by the city to Charles L. Rea under the latter's contract with the city, and to transport to St. Louis all hogs fed on the island by plaintiff and shipped therefrom to market.

The bill further alleged that the delivery of garbage ranged from 120 to 350 tons per day, and required from 4,800 to 14,000 hogs to consume the same; that Charles L. Rea, in May, 1925, entered into a contract with Frank Heckman, under which Heckman was to receive one-third of all the garbage delivered to Charles L. Rea from day to day by the city.

The bill further alleges that the joint adventure had operated at a loss up to the time of the commencement of the action, in that the receipts had not exceeded the reasonable and necessary operating expenses incurred and paid in the prosecution thereof, but that plaintiff "believes that, with fair weather conditions, if he is allowed to continue the unmolested prosecution of said adventure, from now until the expiration of said contract, * * * he will be able to earn a net profit for himself and said Charles L. Rea. * * * That by reason of the uncertainties inherent in said adventure it is not possible to determine in advance whether it can be prosecuted successfully or at a loss, and, if successfully, it is not possible, * * * to legally determine what the profits therefrom might

be, as the purchase and fattening of hogs for market is a business highly speculative in character."

The bill further alleged that plaintiff took possession of a 10-acre tract on the island for the purpose of conducting the hog-feeding business thereon, and expended approximately $30,000 in constructing platforms, sheds, pens, and other structures; that he has at all times maintained on the island, except during periods of ice or high water, not less than 2,500, nor more than 7,500, hogs, and has advanced and paid the purchase price of such hogs, and the transportation costs incurred in shipping such hogs to St. Louis, and has in all other respects performed on his part the contract of joint adventure.

The bill further alleged: That on April 15, 1927, Charles L. Rea, without legal or just cause, notified plaintiff that, after such notice, plaintiff would not be permitted to feed any more hogs on the island, and that no more garbage would be supplied to plaintiff.

That Stanley Rea and Alexander Parkhurst are now in possession of and conducting independent feeding grounds and operations on the island for Charles L. Rea, and are taking and appropriating the garbage heretofore delivered to plaintiff under the contract of joint adventure, and will deprive the plaintiff of the use of such garbage.

The bill prayed for an order enjoining Charles L. Rea, Stanley Rea, Alexander Parkhurst, and the Packet Corporation, from in anywise molesting or interfering with the transportation of hogs for plaintiff to the island or with the delivery of garbage in sufficient quantities at the island to feed such hogs maintained there by plaintiff, subject to the rights of Frank Heckman in such garbage, or with plaintiff's possession, use, and occupation of the feeding grounds, or with his management and control thereof, or with the transportation of such hogs from such island to market, and restraining the defendants generally from in anywise interfering with or molesting plaintiff in the prosecution of the joint adventure, and in doing any of the things agreed to be done by the parties to the contract of joint adventure.

It further prayed for a mandatory injunction against the Packet Corporation, directing it and commanding it, as long as it should continue to receive such garbage from the city of St. Louis, as the agent of Charles L. Rea, to continue making deliveries of such garbage to plaintiff, and commanding it to deliver to plaintiff all garbage required by plaintiff to feed not exceeding 7,500 hogs on such island, after delivering to Heckman his portion of such garbage.

It further prayed for the appointment of a receiver to take charge of such garbage as and when delivered to the Packet Corporation, with full power and authority to control and direct the distribution thereof between the plaintiff, Charles L. Rea, and Frank Heckman.

[1] An injunction decree enjoining the breach of a contract is in effect a decree for its specific performance, and the principles which govern the granting of both remedies are generally the same. Hutchinson Gas & Fuel Co. v. Wichita Natural Gas Co. (C. C. A. 8) 267 F. 35, 38; Shubert v. Woodward (C. C. A. 8) 167 F. 47, 53; Arizona Edison Co. v. Southern Sierras Power Co. (C. C. A. 9) 17 F.(2d) 739, 740; United Cigarette Machine Co. v. Winston Cigarette Machine Co. (C. C. A. 4) 194 F. 947, 958; General Electric Co. v. Westinghouse Electric & Mfg. Co. (C. C. N. Y.) 144 F. 458, 463; 32 C. J. § 281, p. 187.

[2-5] A court of equity will not ordinarily decree specific performance when it cannot dispose of the matter in controversy by a decree capable of present performance. It will not as a general rule enjoin a breach of a contract where to render its decree effective it would have to give continuous supervision and direction to the matters involved over a long period of time. It will not ordinarily enjoin the performance of duties which involve the exercise of skill, discretion, and cultivated judgment. Alexander v. Hamilton (C. C. A. 8) 287 F. 508, 510; Shubert v. Woodward (C. C. A. 8) 167 F. 47, 55, 56; Arizona Edison Co. v. Southern Sierras Power Co., supra; Rutland Marble Co. v. Ripley, 10 Wall. (77 U. S.) 339, 358, 19 L. Ed. 955; United Cigarette Machine Co. v. Winston Cigarette Machine Co., supra; Pantages v. Grauman (C. C. A. 9) 191 F. 317, at 323; York Haven Water & Power Co. v. York Haven Paper Co. (C. C. A. 3) 201 F. 270, 278; General Electric Co. v. Westinghouse Elec. & Mfg. Co. (C. C. N. Y.) 144 F. 458, 462. The general rule is that a court of equity will not enjoin a breach of contract which is executory on both sides where the remedy is not mutual. Where, therefore, the obligation imposed by the contract upon the plaintiff is of such a nature that a court could not specifically enforce it against him at the instance of the defendant, a court of equity will ordinarily deny injunctive relief to the plaintiff against a violation of the contract by the defendant, on the ground of want of mutuality of remedy. Strang v. Richmond

P. & C. R. Co. (C. C. A. 4) 101 F. 511, 517; General Electric Co. v. Westinghouse Electric & Mfg. Co., supra; Elec. M. & E. Corporation v. United P. & L. Corporation (C. C. A. 8) 19 F.(2d) 311, 313, 314; Shubert v. Woodward, supra (C. C. A.) 167 F. 55; Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955; Welty v. Jacobs, 171 Ill. 624, 49 N. E. 723, 40 L. R. A. 98; Jackson v. Marshall, 178 Ill. App. 27; O'Brien v. O'Brien, 197 Cal. 577, 241 P. 861, 865; Pantages v. Grauman (C. C. A. 9) 191 F. 317, 322, 323; Roller v. Weigle, 49 App. D. C. 102, 261 F. 250; Taussig v. Corbin (C. C. A. 3) 142 F. 660, 666, 667; 32 C. J. § 296, p. 194; 36 Cyc. p. 581.

[6] A court of equity will not directly enforce a contract to render personal services by a decree for specific performance, and it will not indirectly or negatively enforce such a contract by an injunction restraining the violation thereof. Karrick v. Hannaman, 168 U. S. 328, 335, 18 S. Ct. 135, 42 L. Ed. 484; Taussig v. Corbin (C. C. A. 3) 142 F. 660, 666; 32 C. J. § 308, p. 199; 36 Cyc. p. 630.

[7] The remedies of specific performance and injunction against the breach of a contract are not matters of right, but rest in the sound discretion of the court, to be exercised, not arbitrarily, but according to the settled principles of equity and with reference to the circumstances of the individual case. 32 C. J. § 11, p. 29; North Fork Water Co. v. Medland (C. C.) 187 F. 163, 169; Electric Management & Engineering Corporation v. United P. & L. Corporation (C. C. A. 8) 19 F.(2d) 311, 313; Arizona Edison Co. v. Southern Sierras Power Co., supra; Hennessey v. Woolworth, 128 U. S. 438, 9 S. Ct. 109, 32 L. Ed. 500; Savage v. Shields (C. C. A. 8) 293 F. 863, 868; Alexander v. Hamilton, supra; 36 Cyc. 548, 549.

[8] In the light of these principles and the facts alleged, did the trial court err in dismissing the bill?

Counsel for plaintiff places much reliance upon the decisions of this court in Leavitt v. Windsor Land & Investment Co., 54 F. 439, and Texas Co. v. Central Fuel Oil Co., 194 F. 1.

In the first case, the contract involved, although in the form of a lease, was in legal effect a partnership agreement, under which the plaintiff agreed to contribute his time and skill in the management and conduct of a theater business and to pay a fixed sum for lighting and heating the theater building, and a fixed sum for rent, and under which the defendant, the owner of the building, was to receive as additional rent one-half of the net annual profits accruing from the business, and under which each party was to pay one-half of the losses of the business. After the contract had continued for some time, defendant, claiming a breach of the contract by the plaintiff, took forcible possession of the theater building, and excluded the plaintiff and his agents therefrom. The bill prayed for a mandatory injunction restoring the plaintiff to the possession of the premises and an injunction restraining the defendant from interfering with the plaintiff's possession and management of the property and for a specific performance of the contract. The lower court entered a decree dismissing the bill for want of equity. This court, in reversing the trial court, directed that a decree should be entered to the effect that the plaintiff was entitled to the occupation and possession of the leased premises under the terms and conditions of the lease, so long as he should observe the covenants thereof, and enjoined the defendant from taking possession of the leased premises or in any manner interfering with plaintiff's possession thereof, for any alleged breaches of the covenants of the lease by the plaintiff alleged to have happened prior to the filing of the cross-bill in the case. This case would be persuasive authority for plaintiff's position, if he merely asked for an injunction restraining the defendant Charles L. Rea from interfering with the plaintiff's possession of the island and his conducting thereon the business of the joint adventure, for and on account of any alleged breach prior or to the commencement of the suit. The plaintiff here, however, seeks other and additional relief, which he must necessarily have, if the decree is to be effectual in correcting the alleged wrongs against which he complains. He asks for a mandatory injunction directing the Packet Company to continue to carry the garbage from the city's dock to the island, and to distribute the same to the plaintiff, to Charles L. Rea, and to Heckman, in accordance with their respective rights, until the end of the period of the joint adventure. These duties to be performed by the Packet Company are continuous. They extend over a period of years. They involve the exercise of skill, discretion, and judgment. They would require of the court protracted supervision and direction. They are not such duties the performance of which a court of equity will ordinarily undertake to compel either by decree for specific performance or injunction.

The facts in Texas Co. v. Fuel Oil Co., supra, clearly distinguish it from the instant case. This court, in the opinion, said:

"The contract sought to ·be enforced in this case runs for ten years only, and involves no 'skill, personal labor, and cultivated judgment.' What it does require is easily ascertainable, and, if carried out in good faith, ought not to give rise to any disputes requiring the interposition of the court."

Finally, plaintiff's duties under the contract involve personal services, and the exercise of discretion, skill, and judgment, in the handling of the joint adventure. Under well-settled principles, a court of equity could not compel specific performance of this contract on the part of the plaintiff. It follows that mutuality of remedy is wanting, and this affords another ground for denying the equitable relief which plaintiff here seeks.

We accordingly conclude that the court did not err in dismissing the bill, and the decree below is affirmed.