**Mary Jewell PORTER, Respondent,**

v.

**Max David PORTER, Appellant.**

**No. 12357.**

Missouri Court of Appeals,
Southern District,
Division One.

July 21, 1982.

Ronald C. Spradley, Spradley & Wirken, Kansas City, for respondent.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for appellant.

GREENE, Chief Judge.

Max David Porter appeals from the trial court's judgment directing specific performance of a portion of a property settlement agreement that he had entered into with his wife, Mary Jewell Porter, prior to their divorce. The settlement agreement language in question provides that Max furnish Mary "a current model automobile, or pay to her the reasonable rental expense thereof."

Mary's action against Max was in two counts. Count I was an action in specific performance. It alleged that the parties had executed a property settlement agreement prior to their divorce in 1972; that the agreement was approved by the trial court at the time the divorce decree was entered; and, that since 1979, Max had failed and refused to perform that portion of the agreement wherein he promised to furnish her a current model automobile, or pay to her the reasonable rental expense thereof. Mary contended that she had no adequate remedy at law since future damages could not be reasonably ascertained, and that she would have to bring multiple actions in the future, which would pose an unreasonable burden on all concerned. Count II was an action for damages which alleged Max had failed to perform that section of the agreement which required him to pay Mary an additional sum of $1,000 in each year he received a bonus of $5,000 or more from his employer.

In his counterclaim, Max requested modification of the settlement agreement, alleging that he had formerly been employed by Porter Cadillac-Buick; that the automobile agency had been sold; and, that he was now unemployed. Max prayed for termination of the alimony provisions of the agreement and decree, and asked to be relieved of any obligation to furnish Mary with an automobile. The trial court dismissed the counterclaim, evidently on the theory that the settlement agreement provisions were contractual rather than decretal, and, therefore, not subject to modification.

Max then filed an amended answer and counterclaim. In his answer, he alleged, among other things, that an obligation in the nature of alimony (furnishing the car) cannot be enforced by an action for specific performance, and that if the agreement to furnish an automobile was contractual, it was void and unenforceable because it was vague, indefinite, and ambiguous. The counterclaim alleged that, if the agreement was to be strictly construed, Max was enti-

tled to a refund since he had paid Mary approximately $15,000 more than the property settlement required since the divorce.

After trial, the court entered judgment for Mary in her action for specific performance, denied her claim for damages, and denied Max relief on his counterclaim. The trial court ordered Max to furnish Mary with a current model automobile every year, commencing in 1981, with Mary to return the car she then had to Max, and that this practice should continue from year to year, unless Mary remarries. Max was given the option to pay Mary "the reasonable rental expense" for a current model automobile, rather than giving her a car each year.

■ Since this was a court-tried case, the judgment should be sustained if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on an erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Since the judgment is based on an erroneous declaration and application of law, it must be reversed.

The record shows that prior to the divorce of the parties, Max discussed a property settlement agreement with Mary and wrote down on a piece of paper, at her request, what he thought was a fair settlement. Mary took the paper to her attorney who drew the settlement agreement. Her attorney was a neighbor and family friend who Max thought was representing both parties in the divorce action. Max did not retain a separate attorney, but relied on Mary's attorney to prepare the property settlement agreement. Max never talked to Mary's attorney concerning the property settlement.

The agreement provided for the disposition of the real and personal property of the parties, custody and support of the two minor children of the parties, payment of debts, support for Mary, and miscellaneous provisions. The support provisions in paragraph 9 of the agreement provided that Max would pay Mary $350 a month as alimony, and furnish her a current model automobile, or pay to her the reasonable rental expense thereof. It also provided that in the event Max received an annual gross bonus of $5,000 or more that he would pay Mary an additional $1,000 in such year. The paragraph concluded with the statement that if Mary remarried, all obligations of Max to her, as set out in paragraph 9, would cease. Max and Mary signed the agreement.

At the time the property settlement agreement was entered into, Max was an employee of an automobile agency known as Porter Cadillac-Buick. As such, he could buy automobiles well below retail cost, use them for a year, and then sell them for approximately what he had paid. There is nothing in the record to show that either of them contemplated whether Max would be obligated to furnish Mary with a car if he left his employment with the automobile agency.

Mary obtained a default divorce. Max was not present in person or by attorney. The decree, dated March 1, 1972, contains the notations "settlement agreement filed and approved" and "defendant ordered to pay plaintiff as child support and alimony the sum as set out in property settlement."

After the divorce, and until the fall of 1979, Max furnished Mary with a new or demonstrator Buick automobile every year when the models changed, taking back the car that Mary was driving. Through his position with the car agency, this practice cost him little, if any, money. He paid his alimony and child support, paid medical and dental expenses for the children, paid for gasoline and insurance for the car and gave Mary additional money over and above what he had obligated to do. In early 1980, the automobile agency was sold and Max's employment there was terminated. Since he was unemployed and unable to buy and sell automobiles at the prices he previously could, Max advised Mary that he could no longer furnish her with a new car every year, but offered to give her the title to the 1979 Buick she was driving. Mary refused, and brought suit.

An action in specific performance to compel performance of a contract is an equitable remedy that presupposes a concluded contract, sufficiently definite and certain in its terms so as to leave no doubt that there had been a meeting of the minds of the parties on the terms of the contract so definite that promises and performance are reasonably certain, not in doubt, or subject to future ascertainment. *McKenna v. McKenna*, 607 S.W.2d 464, 467 (Mo.App. 1980). A court of equity will not decree specific performance of a contract which is uncertain, incomplete, or indefinite in terms or intendments. *Ellison v. Wood Garment Company*, 286 S.W.2d 27, 30–31 (Mo.App. 1956).

The support provisions of the settlement agreement which relate to the furnishing of an automobile fall short of the prescribed standards for the issuance of a specific performance decree. They do not specify the make or model of the automobile to be furnished. While they do say current model, they do not define that term. The provisions do not state whether Mary is to return the car presently in her possession when Max delivers a "current model" to her, or when the automobile is to be delivered to Mary. Furthermore, the agreement does not say whether an automobile must be provided each and every year, or requires only a one-time delivery of a "current model" automobile. As to the term "reasonable rental value" in lieu of furnishing an automobile, the agreement does not say how such value would be computed, or when it was to be paid.

Due to the lack of specificity, the support provisions of the agreement which relate to the furnishing of an automobile are uncertain, incomplete, and indefinite in terms and intendments to such a decree as to make them void and unenforceable. Another defect is that enforcement of the specific performance decree would require continual supervision of the court in an effort to resolve some of the questions raised above. In such cases, specific performance will not lie. *Engemoen v. Rea*, 26 F.2d 576 (8th Cir.), cert. denied, 278 U.S. 627, 49 S.Ct. 28, 73 L.Ed. 546 (1928).

For the reasons stated, the trial court's judgment is reversed and the cause is remanded with directions that the trial court enter judgment for defendant, Max Porter, on Count I of plaintiff's petition. In all other respects, the trial court's judgment is affirmed.

All concur.