**GREASE MONKEY INTERNATIONAL, INC., Plaintiff/Appellant,**

v.

**David GODAT d/b/a Auto Trim Design, Defendant/Respondent.**

No. 66584.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 5, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1996.

Application to Transfer Denied
March 26, 1996.

Ziercher & Hocker, P.C., Mark F. Hearne, II, P. Tabot Dyke, Clayton, for plaintiff/appellant.

Becker, Dufour & Yarbrough, Charles F. Dufour, St. Louis, for defendant/respondent.

PUDLOWSKI, Judge.

This is an appeal from a judgment of the circuit court denying appellant's request for specific performance and requiring appellant to pay respondent's attorney's fees pursuant to the terms of the contract entered into by the parties. Appellant argues the trial court erred in: 1) refusing to grant specific performance; 2) awarding attorney's fees based on the provision in the contract and 3) imposing a lien on the property that was the subject matter of the contract. We find the trial court erred in imposing the lien on the property. In all other respects, the trial court's judgment is upheld.

In April 1992, Grease Monkey International Inc. (appellant) and David Godat (respondent) entered into a contract for the sale of property located at 10638 Halls Ferry Road in St. Louis County. The contract contained a financing contingency which stated "This contract is contingent upon the availability to purchaser of financing as set forth below, to be secured by a deed of trust on said property. If the commitment therefore be not obtained by noon of May 22, 1992, this contract shall be null and void and earnest deposit returned to purchaser." The financing contingency also gave respondent the right "To obtain conventional financing on terms and conditions, including interest rate, satisfactory to purchaser in its sole discretion." The contract contained another provision relating to litigation. That clause stated "In the event of any litigation between the parties the prevailing party, in addition to and cumulative with any other right or remedy, shall be entitled to recover its costs incurred in such litigation, including a reasonable attorney's fee."

The sales contract was extended twice, once on May 23, 1992 and again on June 30, 1992. The May 23 agreement extended the dates for financing commitment, closing and environmental property assessment. All other terms remained the same. The June 30 extension waived all of respondent's conditions except the financing contingency and also provided the earnest money deposit would be non-refundable. The June 30 extension set July 9 as the deadline for the financing contingency and closing for July 15. The extension also identified Boatman's Bank as the lender. Boatman's subsequently denied respondent's loan request and respondent applied with Commerce Bank. In an effort to help respondent secure another extension of the contract, the vice president of Commerce Bank sent a letter to appellant's real estate agent on July 9 stating Commerce Bank approved a loan to David Godat for the purchase of the property on Halls Ferry Road. The bank officer testified the letter was not a loan commitment and that he informed appellant's agent a loan commitment would only be issued upon receipt of an appraisal. Respondent's agent testified he informed appellant, through its agent, respondent would not be able to obtain a loan commitment by the July 9 deadline. Appellant's own agent testified the letter from Commerce Bank was not typical of a loan commitment and further, that in her experience, most loan commitments required an appraisal.

After receipt of the letter from Commerce Bank, appellant wrote to respondent's agent stating it understood the bank letter satisfied the financing contingency. Respondent's agent received the letter on July 10. Respondent did not reply but continued to pursue financing.

Appellant refused to grant an extension of the contract when the closing did not occur on July 15, 1992. Instead, it sent a letter to respondent informing him the contract would only be extended if respondent acknowledged the letter of July 9, 1992, satisfied the financing contingency and agreed to make an additional $5,000 non-refundable earnest deposit, which would be forfeited if closing did not occur on the newly proposed date. Appellant also sought an increase in the purchase price of the property. Respondent refused to agree to these additional terms. On September 14, appellant filed this suit seeking specific performance of the original contract.

The trial court denied appellant's request for relief because it found the July 9 financing contingency was not fulfilled, thereby, rendering the agreement void under the terms of the contract. It also found specific performance was inappropriate because appellant did not prove it had an interest in the property sufficient to convey title. Title to the property was in Grease Monkey Income Limited Partnership, 1987–I according to the records at the St. Louis County Recorder of Deeds. Appellant alleges this partnership was dissolved and its assets rolled over into Grease Monkey Holding Co., Inc. Appellant, Grease Monkey International, Inc. is a wholly owned subsidiary of the holding company. Based on this relationship appellant alleges it owns the property. The trial court also gave effect to the attorney's fees provision of the contract and awarded respondent costs of approximately $27,000. Respondent filed a motion for additional attorney's fees to cover costs up to and including this appeal.

Appellant raises nine points on appeal. For the sake of clarity some of the points are addressed out of order.

■ Our review of this court tried case is governed by Rule 73.01 as interpreted by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm the judgment of the trial court unless it is against the weight of the evidence or it erroneously declares or applies the law. *Id.*

■ Appellant first argues the trial court erred by adopting respondent's findings of fact and conclusions of law. We disagree. The trial court's adoption of a party's proposed findings of fact and conclusions of law is not per se error. *Goad v. State*, 839 S.W.2d 749, 751 (Mo.App.1992). As long as there are no inconsistencies between the findings of fact and the actual facts and the legal conclusions are sufficiently specific to permit meaningful review, there is no error. *Id.* The trial court made a factual finding that appellant did not own the property and found the contract was void pursuant to the terms of the contract. The court then made legal decisions. First, to give effect to the attorney's fee provision of the contract and second to impose a lien on the property. We will discuss the propriety of the court's conclusions but point out there is nothing inconsistent in the findings of fact. The issue is with the court's legal conclusions in light of its factual findings. The trial court was sufficiently specific in its legal conclusions to allow meaningful review. Therefore, we find no error. Appellant's point one is denied.

■ In point four, appellant maintains the trial court refused to enforce the contract because it found the contract between the parties was uncertain, incomplete or indefinite and was thus invalid. It asserts this holding was in error. We would agree with appellant's argument if the trial court had indeed based its ruling on that premise, but it did not. The trial court cited a number of rules of law pertaining to specific performance, among them the proposition that a party must show that a valid, definite and certain contract exists before specific performance can be granted. *Porter v. Porter*, 637 S.W.2d 396, 399 (Mo.App.1982). Under the terms of the contract, the agreement was void if the financing contingency was not met. The trial court found the financing contingency had not been met and, therefore, there was no valid sales contract for it to enforce. As we discuss below, the evidence supports this finding. Appellant's point four is denied.

■ In point six, appellant argues the trial court erred in finding the financing contingency had not been met rendering the sales contract void. We find no error. There was ample testimony and evidence to support the trial court's conclusion the financing contingency had not been met. Respondent had the right to approve the terms of financing and testified he would not approve a financing arrangement when he was uncertain as to the amount the bank would loan. The vice-president of Commerce Bank testified that the amount of the loan was contingent upon the appraisal and that appellant's agent was made aware of that. This witness also testified that the letter he sent appellant on July 9 only expressed a willingness to make a loan to respondent and it was not a loan commitment. Appellant's own agent admitted the letter was not a customary loan com-

mitment and that loan commitments require an appraisal. This court gives great weight to the trial court's assessment of the credibility of witnesses and to the facts based on their testimony. *In the Interest of R.A.S.,* 826 S.W.2d 397, 399 (Mo.App.W.D.1992). The trial court chose to believe testimony favorable to respondent and we defer to its judgment.

The evidence cited above was sufficient to support the trial court's holding regarding failure of the financing contingency but appellant's own acts, after the financing commitment deadline passed, offer the most compelling proof the contingency was not fulfilled. Appellant's correspondence of August 24 is inconsistent with its present position. Appellant wrote "You are hereby notified that you have defaulted in the performance of said sales contract, specifically having failed to complete among other requirements, the provisions of paragraph 4 & 5 of the extension of contract terms dated June 30, 1992." Paragraph 4 of the extension is the requirement that respondent fulfill the financing contingency by July 9, 1992. While we do not agree with the legal conclusion stated in the letter, it does amount to an admission by appellant the financing contingency was not met by the July 9 deadline. In addition, there was testimony appellant refused to extend the contract after the deadline passed unless respondent agreed to different terms. This evidence leads to the conclusion appellant, itself, did not believe a valid contract still existed. Because the testimony and evidence support the trial court's finding that the contingency was not met, we find no error and appellant's point six is denied.

In point seven, appellant alleges the trial court erred in holding respondent was relieved of his duty to perform because the closing deadline was a condition for appellant's benefit and it waived the closing date. In light of appellant's letter quoted above, we need not address appellant's argument regarding the benefit of the condition and waiver. Appellant's letter makes it clear the July 15 closing date was not waived and appellant sought a new agreement. Appellant's point seven is denied.

■ Next, we address appellant's argument the trial court erred in awarding respondent attorney's fees because respondent failed to file a counterclaim and, therefore, was barred from collecting. In *King v. King,* 694 S.W.2d 278, 279 (Mo.App.1985), this court held that an oral motion for attorney's fees is not grounds for denial. Rule 55.26 allows oral motions for attorney's fees if made during a hearing or trial provided the parties are afforded adequate notice and a full opportunity to be heard. *Id.* The mere fact an oral motion for attorney's fees is made during the hearing is not grounds for its denial. *Id.* In this case, respondent admitted the terms of the contract which contained the provision for attorney's fees. Respondent also requested attorney's fees in writing in the prayer for relief. In addition, respondent made an oral motion at trial. Appellant argues it was unaware of the facts that gave rise to the claim but had itself asked for attorney's fees under the contract provision. The contract term is the sole fact that gives rise to the request for attorney's fees. Appellant was certainly aware of the contract term. Therefore, it had sufficient notice and a full opportunity to be heard. Appellant's point three is denied.

■ In point five, appellant argues the trial court erred in finding the contract null and void yet premising the attorney's fee award on a provision of that same contract. We find the contract was divisible and, therefore, the trial court did not error. Severable or divisible contracts are, in legal effect, independent agreements about different subjects though made at the same time. *Sanfilippo v. Oehler,* 869 S.W.2d 159, 161 (Mo.App. E.D.1994). The question of divisibility is primarily a question of the intent of the parties determined by the language used and the subject matter of the agreements. *Id.* A contract is entire if the performance of one party is dependent upon the performance of the other but is divisible if the contract embraces separate distinct promises that admit to separate execution. *Id.* The contract at issue in this case contained an agreement for the sale of real estate contingent upon financing availability and approval by the seller. Failure of the contingency voided the con-

tract. An additional term provided for litigation costs, including attorney's fees, to the prevailing party in the event of any litigation. Clearly, these two promises were not dependent upon one another. The agreement as to litigation reimbursement only arose if and when a suit was brought by one of the parties to the contract. The sales agreement in no way depended upon the litigation clause. The words used by the parties also indicate they intended two distinct promises. The litigation clause stated the prevailing party would be reimbursed in the event of "any litigation" between the parties. This contract provision does not condition effect of this clause upon the court's legal conclusions. We find the language expresses a clear intent the cost reimbursement would apply to all litigation, just as it says. Because the contract meets the tests for divisibility, we find it encompassed two independent agreements and, therefore, the trial court did not err in giving effect to the fee agreement while holding the sales agreement void.

■■■ In point two, appellant argues the court erred in granting a lien against the property at issue in the contract despite its finding appellant did not own it. Appellant insists it owns the property and argues it was the trial court's denial of specific performance that was in error. Appellant's argument regarding specific performance is moot but we cannot uphold the lien on the property for the reasons stated below.

Appellant offered the following facts to prove an interest in the property. Although Grease Monkey Income Limited Partnership, 1987–I was the record owner of the property at the time of trial, appellant alleged this limited partnership was rolled over into Grease Monkey Holding Company. In the rollover, the holding company acquired the limited partnership's assets, including the property at issue in this suit. Appellant is the wholly owned subsidiary of Grease Monkey Holding Co. and the two corporations have the same directors and officers. By virtue of these facts, appellant claimed an ownership interest in the property.

■■■ The trial court used appellant's assertion of ownership to impose liability on the parent by way of a lien. We reverse. In the eyes of the law, two different corporations are two different persons. *Blum v. Airport Terminal Services Inc.,* 762 S.W.2d 67, 73 (Mo.App.E.D.1988). This is true even if one corporation is the sole shareholder of the other. *Id.* Normally, a parent corporation is not responsible for the acts of its subsidiary corporation; the exception to this rule is where the *wronged party* pierces the corporate veil. *Mitchell v. K.C. Stadium Concessions, Inc.,* 865 S.W.2d 779 (Mo.App. W.D.1993). Two separate corporations may be treated as one only where there is such dominion and control that the controlled corporation has no separate mind, will or existence of its own and is but an alter ego for its principal. *Id.* Such dominion and control must be established by evidence and is not presumed. *Id.* Under the facts of this case, this is the only theory by which the parent could be held liable for the acts of its subsidiary. Here the parent corporation was not even before the court. Placing a lien on the property has the effect of making the parent liable for the debt of its subsidiary without an opportunity to be heard. The trial court simply presumed dominion and control from appellant's contention. That presumption is contrary to law. Our concern here is for the stockholders of the parent corporation. There is no showing their interests have been represented. Therefore, the imposition of the lien must be reversed.

In point eight, appellant argues the trial court erred in finding it was not ready willing and able to perform on the contract because it did not own the property or have the ability to convey it. In light of the above discussion and failure of the financing contingency we deny this point.

■■■ In point nine, appellant argues the trial court erred by not awarding specific performance of the contract where the record shows both parties were willing to perform according to the terms of the original contract. The record shows respondent was always willing to perform on the original contract but that fact does not entitle appellant to a favorable judgment. In order to obtain specific performance of a contract the party seeking the contract must be ready willing and able to perform at all times. *Roberts v. Roberts,* 552 S.W.2d 296, 298 (Mo. App.1977). Appellant was not willing to per-

form on the original contract at all times. It refused to grant an extension and tried to arrange a more favorable deal after respondent failed to meet the closing deadline. Only after respondent refused to agree to the new proposal did appellant file this suit seeking to enforce the original contract. Because appellant did not remain willing to perform on the contract at all times it was not entitled to specific performance. Equity would hardly be served by allowing appellant to refuse an extension in an attempt to receive a better deal and then prevail under a request for specific performance at respondent's expense. Appellant's point nine is denied.

The order of the trial court granting a lien against the property is reversed. In all other respects the trial court's ruling is upheld. Respondent's motion for attorney's fees in the amount of $9,798.71 to cover the cost of this appeal is granted.

Judgment affirmed in part and reversed in part.

AHRENS, PJ., and GRIMM, J., concur.