## DANIELS v. BROWN SHOE CO., Inc.
### No. 3002.

Circuit Court of Appeals, First Circuit.
May 25, 1935.

WILSON, Circuit Judge, dissenting.

———◆———

Stuart C. Rand, of Boston, Mass. (Alvah G. Sleeper and Bailey Aldrich, both of Boston, Mass., on the brief), for appellant.

Charles W. McDermott, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This appeal involves a question of practice. The Brown Shoe Company brought an action at law against Daniels to recover certain payments which it had made to him under two patent license agreements, upon the ground that the consideration for such payments had failed. We shall refer to the parties, plaintiff and defendant, as they appeared in this original action. The defendant (Daniels) pleaded the general issue and certain other

defenses, and also filed what is called a "bill of equitable counterclaim." In this bill he set out the license agreements, charged breaches by the Shoe Company of certain covenants in them to be performed by it, and prayed for specific performance by the Shoe Company of certain covenants, for preliminary and permanent injunctions against breaches of certain other covenants by it, for preliminary and permanent . injunctions preventing the Shoe Company from violating or repudiating the contract, for an accounting of damages caused to the defendant by the plaintiff's alleged breaches of the license agreements, and for such other and further relief as might be proper. There is no prayer for an injunction restraining the prosecution by the Shoe Company of its present action; the bill is not an equitable defense; it is, as it is entitled, a counterclaim. The plaintiff moved to strike it out. The District Judge allowed the motion, struck out the counterclaim, and put the case on the law list for trial. The defendant has appealed. His right to do so is not challenged. See Enelow v. New York Life Insurance Co., 293 U. S. 379, 55 S. Ct. 310, 79 L. Ed. ——. Nor is there any contention that the matters alleged in the counterclaim are not such as can be made the subject of equitable counterclaim. It is not good practice to use a motion to strike out in order to test the legal sufficiency of a pleading, as was expressly held in Marsch v. Southern N. E. R. Corp., 230 Mass. 483, 491, 120 N. E. 120. We treat the motion as equivalent to a demurrer or motion to dismiss, as was done in the Marsch Case.

■■ The covenants in the license agreements which the bill charges have been broken by the plaintiff are the second, fifth, seventh, eighth, and ninth; there are full and careful allegations of breaches. Passing for the moment the second clause, the fifth clause reads as follows:

"It is mutually agreed by and between the parties to this agreement that the Licensee shall, during the life of the agreement, exercise its best efforts to supply the public demand for boots and shoes embodying the inventions aforesaid, and shall also use its best efforts to create and promote such a demand. To this end Licensee agrees to cooperate with retail shoe dealers in promoting window displays, and other advertising features, and in other ways and manners to exploit and develop these shoes and the sales thereof. If at any time the Licensee ceases to use its best efforts to supply the public demand for boots and shoes embodying the inventions aforesaid, or discontinues its efforts to create such a demand, then upon written notice Licensor may at his option terminate this agreement."

The plaintiff. contends that this clause is of such indefinite and detailed character as not to be specifically enforceable in equity. See Rutland Marble Co. v. Ripley, 10 Wall. 339, 358, 359, 19 L. Ed. 955; Engemoen v. Rea, 26 F.(2d) 576, 578 (C. C. A. 8); Great Lakes, etc., Co. v. Scranton Coal Co., 239 F. 603 (C. C. A. 7).

- In our opinion this contention is well founded. In order for a contract to be specifically enforceable, the acts to be performed must be stated with such precision, or so precisely ascertainable when the contract is applied to the facts as to make its enforcement a practicable matter; also the acts directed to be done must be of such character that it is practicable for a court to oversee and compel the performance of them. Cases supra. An inspection of the clause under discussion shows we think that it does not meet these tests.

■ The seventh clause reads as follows:

"The Licensee further agrees that it will not itself, or through its subsidiaries, enter into the manufacture or purchase or purchase for sale of any uppers, boots or shoes of an infringing or similar nature, calculated or tending to impair the production and sale of the boots and shoes covered by this license."

The plaintiff makes the same contention as to this clause. But in respect to it we are of opinion that the contention is not well founded. The covenant is wholly negative, the plaintiff agreeing in substance that it will not manufacture or deal in any articles which infringe the patents in question, or tend to impair the production and sale of boots and shoes covered thereby, or of any woven boots and shoes except in accordance with the agreements. There is nothing too indefinite to enforce specifically in such agreements. Whether any given article is within the scope of the patents is determined as a matter of course in infringement proceeding; and whether certain boots and shoes are so similar to the patented articles as to interfere with the production and sale of the latter, and to violate the terms of the agreement are definitely ascertainable facts.

The eighth and ninth clauses read as follows:

"8. The Licensee further agrees that it will keep Licensor advised as to the factories of itself or its subsidiaries where uppers or parts thereof are assembled and united in accordance with said inventions, and also as to the types and processes of shoes for which said uppers and parts are intended.

"9. Licensee further agrees that it will stamp the Patent Numbers on the sock lining or heel pad, on the inside of the shoe where it will be visible to the purchaser of the shoes, on all shoes utilizing vamps, quarters or parts thereof manufactured in accordance with this agreement, in the following form:

"Licensed Under

"2—C. H. Daniels

"U. S. Letters Patent

"No. 1,828,320, October 20, 1931

with a figure '2' on the second line to identify Licensee."

We see nothing in either of these clauses too vague and indefinite to be specifically enforced. Their subject-matter is of such character that they are specifically enforceable in equity.

The next defense made by the plaintiff to the counterclaim is that it is unenforceable in equity because of lack of mutuality. This contention rests on the third clause of the contract which is as follows:

"3. This License shall extend for one year from the date hereof, and shall be automatically renewed for a like period, from year to year, until the expiration of the patent last above granted on the foregoing inventions, upon the terms and conditions aforesaid, unless this agreement shall be terminated by said Licensor by at least six months' notice in writing."

It will be observed that the agreement binds the licensee during the life of the patent, but is terminable by the licensor at any time on six months' written notice. The contention is that such a contract would not be specifically enforced against the licensor, as he could avoid the decree by terminating the contract, and that therefore it will not be specifically enforced against the licensee. Rutland Marble Co. v. Ripley, 10 Wall. 339, 359, 19 L. Ed. 955, is cited in support of this contention. Commenting on this decision Judge John Lowell said: "I cannot think that the court intended to announce any general proposition that they would never enforce a contract which one party had a right to put an end to in a year. Every thing must depend upon the nature and circumstances of the business." Singer Sewing Machine Co. v. Union Buttonhole Co., 22 Fed. Cas. 220, 223, No. 12,904. The expressions on this point in the opinion in the Rutland Marble Co. Case have been questioned in Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856, and by text-writers. See 16 Col. Law Rev. 443, by Mr. Justice Stone, then Dean of the Columbia Law School. We think that the correct rule is that stated in Epstein v. Gluckin, 233 N. Y. 490, 135 N. E. 861. What "equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant." Cardozo, J., 233 N. Y. at page 494, 135 N. E. 861, 862. There is no difficulty of that sort in the present case. Cases in which the defendant had a right to cancel the contract stand of course on a very different footing.

On the allegations in the counter-claim there have been essential breaches of the agreement by the plaintiff which would justify the defendant in treating the contracts at an end and suing for damages. But the defendant was not obliged to take that course. He might if he so elected treat the contracts as still subsisting and insist on specific performance of them. Day v. Conn. General Life Ins. Co., 45 Conn. 480, 29 Am. Rep. 693; Merrick v. Northwestern Nat. Life Ins. Co., 124 Wis. 221, 102 N. W. 593, 109 Am. St. Rep. 931. With respect to the fifth clauses although the exact limits and requirements of them are too indefinite and require too much supervision for specific performance, if the evidence shows repudiation or breach of these clauses by the plaintiff, equity having jurisdiction of the bill on other grounds will in order to afford complete relief assess damages under them. They are not so vague and indefinite as to be void at law. The question whether the agreements as a whole are void as being in restraint of trade or as creating a monopoly presents a matter of fact to be determined on the hearing. It cannot be said as a matter of law on the face of the agreements that they were of that character.

Returning to the second clause of the agreements, the essential parts read as follows:

(2) The licensee "agrees to adopt the inventions * * * in as complete a line of * * * shoes as the Licensee may deem advisable * * *." The licensee further "agrees to pay to the Licensor royalties * * * on each and every pair of uppers embodying in whole or in part the inventions aforesaid manufactured by the Licensees or its subsidiaries," etc.

Under this clause the licensee was not obligated to use the patented inventions to any greater extent than it might "deem advisable." It was free to abandon the use of them entirely if it saw fit to do so. That, however, is not the situation stated in the counterclaim, which alleges that the plaintiff has manufactured and sold boots and shoes similar to those described in the patents; that it has endeavored to supplant the use of shoes made under the patents with shoes of a similar nature and purpose calculated to impair the sale of shoes made under the patents; that it has supplied the trade with woven boots and shoes without payment of royalties as stipulated in the agreements and continues to do so in spite of requests from the defendant to cease; and that the plaintiff refused to pay royalties due under the agreements or to make the reports thereby called for. If the plaintiff saw fit to use the patented invention, it could do so only under the terms and conditions stated in the agreements. It also bound itself, whether it used the patented inventions or not, not to make any boots or shoes of any infringing character or calculated to impair the production and sale of boots and shoes made under the patents. Speaking very generally the agreements refer to a certain type of boot or shoe as to which the plaintiff agrees that if it makes or deals in them it will do so only in the patented variety and on the terms stated in the contracts and will protect the licensor in the ways therein stated. There is nothing inherently unenforceable in such an agreement.

The decree dismissing the bill is vacated, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion, with costs to the appellant.

WILSON, Circuit Judge (dissenting).

Stating briefly my reasons for dissenting: The counterclaim is obviously in effect a bill for specific performance by enforcing affirmative covenants and enjoining negative covenants. It is agreed the affirmative covenants in paragraph 5 are too indefinite and uncertain to warrant a decree of specific performance. The negative covenants in paragraph 7 of the license agreements are also, I think, too indefinite and uncertain to be permanently enjoined for the reason that the licensee might never know when the shoes manufactured by it were so similar to those described in the license agreements that they would be *calculated* or would *tend* to impair the production and sale of boots and shoes covered by the license. The licensor might recover damages under this paragraph in an action at law, if he could show that the licensee's boots or shoes did impair the sale of boots or shoes made according to its inventions and patents; but the licensee could not know when the products of its factories were so similar as to impair the sale of boots or shoes covered by the license.

Again, there does not appear to be a mutuality of rights or remedies. The licensee could not obtain an effective decree in equity of specific performance, as the licensor can terminate the agreements by a six months' notice at the end of any annual period; but if the licensor has an equitable remedy, the licensee must resort to law to enforce its rights and recover damages for a breach. It has no remedy in equity. 58 C. J. 866, §§ 19, 20; Pomeroy's Equity Juris., vol. V, §§ 2190, 2191; Electric M. & E. Corp. v. United P. & L. Corp. (C. C. A.) 19 F.(2d) 311, 313, 314; Miami Coca-Cola Bottling Co. v. Orange-Crush Co. (D. C.) 291 F. 102, affirmed (C. C. A.) 296 F. 693; Hutchinson Gas & Fuel Co. v. Wichita Nat. Gas. Co. (C. C. A.) 267 F. 35, 39. The case of Guffey v. Smith, 237 U. S. 101, page 115, 35 S. Ct. 526, 59 L. Ed. 856, referred to in the opinion, was not a bill for specific performance.

There is nothing in the case to indicate that the plaintiff will not conform to the terms of the license agreements, if it fails in its law action. If the defendant has good title to the inventions and patents which are the subject matter of the agreements, the plaintiff cannot recover the royalties paid, and would be liable in an action at law for the additional royalties still due under the agreements. If the licensee should continue to refuse to fulfill the provisions of the agreements, the licensor could then recover all future damages for a breach of the agreements to be determined by a jury.