## GULBENKIAN v. GULBENKIAN et al.
### No. 93.

Circuit Court of Appeals, Second Circuit.
Jan. 17, 1945.

Jerome Katz, of New York City (Morris L. Bower, of New York City, of counsel), for appellant.

Thomas A. McGrath, of New York City, for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit upon a contract dated March 25, 1937 between the plaintiff and the defendants. The contract names

Haroutiune Gulbenkian party of the first part, his son Edward, party of the second part, and his nephew Nerses (the plaintiff) party of the third part. It recites that the three parties constitute a partnership, known as Gullabi Gulbenkian & Co., in which Nerses Gulbenkian has a three-sevenths interest; that a New Jersey corporation named Gulbenkian Seamless Rug Co. is indebted to the partnership for loans in the sum of $535,000; and that all of the capital stock of the corporation (for brevity hereafter called "Seamless") is owned by members of the Gulbenkian family, with the exception of a small amount owned by the manager of Seamless.[1] By the terms of the contract the partnership was dissolved and the interest therein of Nerses was transferred to Haroutiune and Edward, and they agreed to pay therefor in installments the sum of $410,000. Such payments were duly made to Nerses and no controversy exists as to them. The con-

troversy arises under article 4 of the contract wherein it was agreed that Seamless "shall be reorganized" so that its "capitalization" shall consist of 5,000 shares of first preferred stock, all to be issued to the defendants, 1500 shares of second preferred stock, of which 900 shares were to be issued to the defendants and 600 shares to the plaintiff, and such an amount of common stock as the defendants might determine. The full text of article 4 is set forth in the margin.[2] No reorganization having been effected and the defendants having refused to proceed with it, the plaintiff in November 1939 brought the present action praying that the defendants be compelled specifically to perform the agreement and for such other relief as the court may deem proper. Federal jurisdiction rests on diverse citizenship, the plaintiff being a British citizen resident in London and the defendants being citizens and residents of the state of New York. The case came to

[1] At the date of the contract the capital stock of Seamless consisted of 5,000 shares of 7 per cent. cumulative non-voting preferred and 1,000 shares of voting common. Haroutiune with his wife and son owned an aggregate of 3,100 shares of the preferred and 475 shares of the common; Nerses and his two sisters owned an aggregate of 1,500 shares of preferred and 224 shares of common, with one additional share of common held by the husband of one of the sisters. The remainder of the stock, 400 shares of preferred and 300 shares of common, was owned by Charles L. Fetterly, business manager of Seamless.

[2] "4. The parties hereto agree that the Gulbenkian Seamless Rug Co. shall be reorganized, so that after the reorganization, the capitalization thereof shall be:

"5,000 shares of first preferred stock entitled to cumulative dividends of $5.00 per share per year, preferred as against the second preferred stock and as against the common stock, liquidated at $100.00 per share, also preferred as against the second preferred stock and the common stock, all of which first preferred stock is to be issued to the parties of the first and second parts or to one of them;

"1,500 shares of second preferred stock, having cumulative dividends of $4.00 per share per year, preferred as against the common stock, and liquidated at $100.00 per share, preferred as against the common stock; 600 shares of said second preferred stock are to be issued to the party of the third part in satisfaction of all of his claims as a stockholder in said Gulbenkian Seamless Rug Co., except as hereinafter

specified, and 900 shares of which are to be issued to the parties of the first and second parts or one of them; and the reorganized corporation shall have such amount of common stock as the parties of the first and second parts shall determine.

"The reorganization shall be had in such manner as may be determined by Joseph W. Henderson, counsel to the party of the third part, and by David J. Gallert, counsel to the parties of the first and second parts, and it is expressly agreed that if said counsel deem it advisable, said reorganization may be had through judgment against the said Gulbenkian Seamless Rug Co., sale thereon, and transfer of the assets thereof to a new corporation. Such reorganization shall be conducted under the joint supervision of the said Henderson and the said Gallert.

"Any class of stock mentioned above may be without par value, if said counsel shall decide, or may have such par value as the said counsel may decide.

"All of the common stock of said reorganized corporation shall be issued to the parties of the first and second parts, but it is hereby agreed that if any stock of the reorganized corporation is distributed to the present stockholders of the Gulbenkian Seamless Rug Co., that the party of the third part shall be treated in regard to his present holdings of stock in the said Gulbenkian Seamless Rug Co. exactly the same way as other holders of stock of the same class.

"This agreement shall be deemed and treated as a consent by the parties hereto to such reorganization as said counsel shall determine to be advisable."

trial in October 1943 and at the close of the plaintiff's evidence the court ruled that he was entitled to neither specific performance nor damages. From the judgment of dismissal the plaintiff has appealed.

In denying specific performance we think the district court ruled correctly. It is well settled that for the granting of specific performance the contract must be sufficiently certain in its terms to permit the decree to state with some exactness what the defendant must do. Williston, Contracts, Rev.Ed. § 1424; A.L.I., Contracts, § 370. For failure in this respect a contract to form a corporation has been denied specific enforcement by the New York courts. Rudiger v. Coleman, 199 N. Y. 342, 92 N.E. 665; Perrin v. Smith, 135 App.Div. 127, 119 N.Y.S. 990. The difficulties which the court would encounter in framing a decree for specific performance in the suit at bar are made evident by the contract itself. The reorganization is to "be had in such manner as may be determined" by Mr. Henderson, counsel for the plaintiff, and Mr. Gallert, counsel for the defendants; if "said counsel deem it advisable", the reorganization may be had by getting judgment against Seamless on its $535,000 indebtedness to the partnership and transferring the assets through execution sale to a new corporation; the reorganization is to "be conducted under the joint supervision" of said counsel. They shall decide whether any class of stock be given a par value and, if so, what it shall be. The defendants are to determine the amount of common stock and how it is to be distributed, subject only to the right of the plaintiff if any is distributed to existing stockholders of Seamless, to be treated in the same way. This provision apparently contemplated that some distribution of new common stock might be made to existing stockholders who were not parties to the agreement in order to obtain their consent to the reorganization. The agreement expressly provides that it shall evidence a consent by the parties "to such reorganization as said counsel shall determine to be advisable"; and each party agreed in article 8 to execute any documents which

either Mr. Henderson or Mr. Gallert may deem necessary or advisable. By the foregoing provisions the parties reserved to themselves or their respective counsel a large measure of discretion as to how the recapitalization of Seamless should be effected and just what it should be. Upon these matters, which cannot be regarded as unimportant details, the counsel never came to agreement before Mr. Gallert's death, on January 18, 1939, although he had caused the Watson plan to be submitted to Mr. Henderson on September 3, 1937.[3] That a court decree could bring about agreement seems unlikely.

The death of Mr. Gallert, the plaintiff urges, does not present an insuperable obstacle to specific performance of the contract since the court could direct the defendants to select another attorney to act with Mr. Henderson as provided in the contract. It is argued that an analogy may be found in Meacham v. Jamestown, F. & C. R. R. Co., 211 N.Y. 346, 105 N.E. 653, Ann.Cas.1915C, 851, where functions vested by the contract in a named engineer were held to be performable by a successor after his death. We may assume without decision that the death of Mr. Gallert would not be an insuperable obstacle, if compulsory specific performance of the contract would otherwise be an available remedy. But such remedy would not be appropriate, in our opinion, even if Mr. Gallert were still alive and able to act under the contract. As already indicated, too many major matters regarding the corporation's capitalization and the manner of effecting its reorganization are left to the "joint supervision" and determination of the parties' counsel to justify decreeing specific performance.

But even though an agreement may be too indefinite in its terms to be specifically enforced, it may be certain enough to constitute a valid contract for breach of which damages may be recovered. A. L.I., Contracts, § 370 Comment (b); Van Siclen v. Mather, 134 Misc. 629, 631, 235 N.Y.S. 589, affirmed 227 App.Div. 790, 237 N.Y.S. 913. We think that the contract at bar is of that character. The parties con-

---

[3] The so-called Watson plan was drafted by Messrs. Watson & Watson, New Jersey attorneys employed for the purpose by the defendants. This plan contained restrictions on sale of the stock to which Mr. Henderson and his client objected. Some modifications of such restrictions were suggested by Mr. Gallert and were submitted by Mr. Henderson to his client but by the time the plaintiff was ready to accept them Mr. Gallert had died and the defendants were unwilling to proceed with the reorganization.

templated by their agreement that the plaintiff should receive, in exchange for withdrawing from the partnership and transferring his interest therein to the defendants, not only the $410,000 which they have paid him but also 600 shares of second preferred stock of the recapitalized Seamless. Those shares he has not received and the defendants have refused to proceed with a reorganization. That plaintiff is definitely prejudiced by the failure to reorganize Seamless seems obvious, because the only chance that Seamless can ever be successful lies in wiping out its overwhelming indebtedness, now owned wholly by the defendants, by means of an issue of stock. On the other hand, the defendants are definitely benefited by failure to reorganize Seamless; they have continued to receive interest on the old indebtedness and to make new loans from year to year, which also draw interest; and whenever the indebtedness shall reach a sum as great as the value of the corporate assets at forced sale the defendants have the legal power and privilege to destroy completely by judgment and execution sale the value of the existing stock of Seamless. To give the plaintiff neither specific performance nor damages gives the defendants an unjust advantage over the plaintiff who parted with his partnership interest in the expectation of receiving some of the reorganized stock as well as the money paid him.

The trial judge, as shown by his opinion, denied the plaintiff damages on two grounds: (1) that the "defendant's right to a trial cannot be defeated by plaintiff suing upon a stated claim for strictly equitable relief and then by motion to amend the pleadings to conform to the proof secure a judgment for damages for breach of contract"; and (2) that proof of damages was insufficient even if the court had power to award them. Neither ground is sustainable.

■ Under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, all pleadings shall be so construed as to do substantial justice, Rule 8(f); legal and equitable claims may be joined, Rule 18(a); pleadings may be freely amended to conform to the proof, Rule 15(b); and

every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if such relief was not demanded in his pleadings, Rule 54(c). In the case at bar the complaint prayed not only for specific performance but also "for such other relief as the court may deem proper". The defendants' answer alleged that the plaintiff "has no rights herein either in law or equity." Nearly two years before the trial the plaintiff gave notice that he would move to amend the prayer to include a request for damages if specific performance were refused. At the opening of the trial this motion was denied on the defendants' claim of surprise despite their answer and the plaintiff's notice of motion. At the conclusion of his case the plaintiff moved to conform the pleadings to the proof. This also was denied. Clearly the defendants had long been on notice of the plaintiff's potential claim for damages. If jury trial was ever claimable, the defendants' failure to claim it, whether intentionally or inadvertently, was a waiver.[4] McNabb v. Kansas City Life Ins. Co., 8 Cir., 139 F.2d 591, 595; James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 230 note 2.

■ But we regard this as a case where the chancellor in ancient equity would have awarded damages if he did not decree specific performance, and hence no jury trial was ever claimable. See Holden v. Efficient Craftsman Corp., 234 N.Y. 437, 138 N.E. 85; Queens Plaza Amusements, Inc. v. Queens Bridge Realty Corp., 265 App.Div. 1057, 39 N.Y.S.2d 463; Daniels v. Brown Shoe Co., 1 Cir., 77 F.2d 899, 901; Connecticut Fire Ins. Co. v. McNeil, 6 Cir., 35 F.2d 675. Consequently dismissal of the action on the ground that the court lacked power to award damages cannot be sustained.

■ Nor do we think that proof of damages was so lacking as to require dismissal. In the Watson plan, which the defendants submitted for Mr. Henderson's approval, they proposed that the 5,000 shares of first preferred stock without nominal or par value should be issued at $88 per share and be paid for by the cancellation of $440,000 of the corporation's indebtedness to the firm of Gullabi Gulbenkian & Co. (which

---

[4] We do not now decide the extent of a defendant's right to jury trial where the plaintiff, without previous notice to defendant, is allowed to conform his pleadings to the proof and in so doing changes the action from one triable to the court to one triable to a jury.

then consisted only of the defendants), and the 1500 shares of second preferred stock without nominal or par value should be issued at $66⅔ per share and be paid for by the cancellation of $100,000 of the corporation's indebtedness to said firm. Here is an admission by the defendant's own proposal that the new second preferred stock would represent assets of the corporation worth $66⅔ per share. Moreover, the balance sheets of Seamless for each of the calendar years from 1935 to 1942 inclusive show a book value largely in excess of the corporation's indebtedness to the defendants, and its debts to others were so small as to be practically negligible. In determinations of value for tax purposes, evidence based on book values, although considered weak in weight, has been accepted. See Bessemer Inv. Co. v. Commissioner, 2 Cir., 31 F.2d 248; Allen v. Commissioner, 1 Cir., 117 F.2d 364. We find no reason for not accepting such evidence, together with the admission, as establishing a prima facie proof of value from which damages could be determined. That the new stock with the corporate indebtedness to the defendants wiped out would be worth more than the old stock with that indebtedness unfunded and hanging over the corporation as a constant threat to its continued existence seems self-evident.

Finally the appellees urge that the plaintiff is precluded from any recovery by the court's finding that he "did not perform all of the provisions of the contract on his part to be performed and hindered and delayed the defendants in their efforts to do so * * *." Any delay chargeable to the plaintiff in failing to agree with the defendants as to the manner of effecting the reorganization is not a breach of such a character as to preclude him from recovering damages for the defendants' refusal to proceed with the reorganization in any form. Neither party regarded time as of the essence; each party was urging the other to proceed in a manner which it believed the contract to require. The plaintiff's efforts by correspondence with Mr. Gallert to induce the defendants to reduce the first preferred stock to 3,500 shares was never treated by the defendants as a repudiation of the contract and may not now be so treated in view of their continued urging that the contract be carried out. It is now they who refuse to carry

it out. Such refusal entitles the plaintiff to damages, and he made a prima facie showing of the amount thereof. Hence it was error to dismiss the complaint.

The judgment must be reversed and the cause remanded to afford the defendants an opportunity to offer their evidence. Since the case was tried without a jury there seems to be no reason for requiring the plaintiff to offer his evidence a second time. Federal Deposit Ins. Corp. v. Mason, 3 Cir., 115 F.2d 548, 552. Consequently we will direct the district judge who heard the plaintiff's evidence to proceed with the trial on the issue of damages as though the defendants' motion for dismissal had not been granted. Judgment reversed and cause remanded for further proceedings in conformity with this opinion.