CENTURY INVESTMENT CORPORA-
TION and Virgil J. Pague,
Appellants,

v.

UNITED STATES of America,
Appellee.

Arthur G. BARNETT and Virginia N.
Barnett, his wife; Donald F. Owens and
Jean Owens, his wife; Edward R. Ester
and Lorraine M. Ester, his wife, Ap-
pellants,

v.

UNITED STATES of America,
Appellee.

No. 15219.

United States Court of Appeals
Ninth Circuit.

Oct. 30, 1957.

As Amended on Denial of Rehearing
Dec. 23, 1957.

———◆———

Lycette, Diamond & Sylvester, Lyle L. Iversen, Seattle, Wash., for Century Investment Corp., and Virgil J. Pague.

Vernon W. Towne, Arthur G. Barnett, Alec Duff, Seattle, Wash., for Barnett, Owens & Ester.

Malcolm S. McLeod, Seattle, Wash., for Hartford Accident & Indemnity Co.

Gerald Shucklin, Seattle, Wash., for Virgil J. Pague.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Harold S. Harrison, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., John A. Roberts, Jr., Asst. U. S. Atty., Seattle, Wash., for U. S. A.

Before HEALY, FEE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This action involves the asserted breach of a contract to remove buildings from four tracts of land in Seattle, Washington. The suit was brought by the United States to obtain specific performance of the contract and damages for the delay in removing the buildings. Two corporations and twelve individuals were named defendants.

After a trial to the court without a jury, a judgment for damages in varying amounts was entered against the following defendants: Century Investment Croporation, Virgil J. Pague, Mr. and Mrs. Arthur G. Barnett, Mr. and Mrs. Donald F. Owens, and Mr. and Mrs. Edward R. Ester.[1]

Barnett, Owens, and Ester, joining in one appeal, contend that, as to them, the judgment cannot be sustained on the theory of breach of contract, as they were not privy to the contract. They further argue that, for various reasons, the judgment cannot be sustained on the theory adopted by the trial court, namely, that damages may be awarded as an equitable substitute for specific performance. Century and Pague, joining in another appeal, contend that the judgment must be reversed as to them because the contracting officer has not determined the amount of damages, and there is assertedly no proof of actual damages.

The facts which must be considered in passing upon these and other questions are established by the unchallenged findings and supplemental findings of fact.

The buildings in question were erected in 1945 as temporary wartime housing by the Public Housing Administration, an agency of the federal government. The land so utilized had been previously acquired by the United States under the condemnation provisions of the Lanham Act, as amended, 54 Stat. 1125, 42 U.S. C.A. § 1521 et seq. Under the terms of the judgments fixing compensation in the condemnation actions, the United States was given the option to renew its exclusive use from year to year, not to exceed three years after the termination of the national emergency.[2] The government filed timely notice, yearly, of

---

1. The male members of these respective marital communities will be hereinafter referred to as if they were the only personal appellants. The action was dismissed as to Mrs. Virgil J. Pague and several other defendants not named above.

2. This was the national emergency which was declared to exist by the Presidential Proclamation 2352 of September 8, 1939 (54 Stat. 2643).

its intention to renew its exclusive use, extending to February 21, 1957.[3]

Prior to June 22, 1953, the administrator of the Public Housing Administration called for bids for the sale and removal of these and other temporary buildings. This action was taken pursuant to § 313 of the Lanham Act, as amended on August 18, 1952, by Ex.Ord. No. 10385, 42 U.S.C.A. § 1553. This section provides for the removal, by demolition or otherwise, not later than July 1, 1954 (except under certain specified conditions) of all temporary housing constructed under the provisions of subchapter IV of the Lanham Act.

The high bid for the purchase and removal of buildings Nos. 102, 103, 104, and 105 was submitted on behalf of Pague. The bid was accepted, but the balance of the purchase price was tendered on behalf of Century, then in the preliminary stages of incorporation. Pague was one of the incorporators. Century, but not Pague, was named in the contract, which was executed on July 14, 1953. Under this contract, Century purchased the buildings and agreed to remove them from the tracts on which they were situated, and to clear the sites by November 12, 1953. The Seattle Housing Authority, which represented the Public Housing Administration in connection with some details of this contract, later purported to extend this termination date to January 15, 1954. Century posted a five-thousand-dollar performance bond.

On August 21 and October 5, 1953, Century sold buildings 102 and 103, respectively, to Pague, for $1,932 each, without imposing the condition or obligation that they be removed from the site. Pague later acquired an interest in the land underlying these buildings.

Century sold building 104 to R. M. Scougal, F. T. Crow, Pague, and the latter's brother, Carl W. Pague, without imposing the condition or obligation that it be removed from the site. On January 20, 1954, Barnett and Owens purchased this building from these persons, for $6,413.09. At the same time, Barnett and Owens acquired an interest in the land under building 104.

In November, 1953, Ester acquired building 105 from Carl W. Pague for $3,590. Carl W. Pague had previously acquired this building from Century for $1,932. Ester later acquired an interest in the land underlying this building. In selling this building, neither Century nor Carl W. Pague imposed the condition or obligation that it be removed from the site.

The purchase of building 104 by Barnett and Owens was a partnership venture, the details of which were handled by Barnett. Prior to making this purchase, Barnett, had full and complete knowledge of the contract obligation of Century to remove the building from its then site. The preliminary title report which Barnett and Owens secured also indicated that the land on which building 104 was located was then held for the exclusive use of the government. Ester and Virgil J. Pague had similar information concerning buildings 102, 103, and 105, and the land on which they were situated, prior to their respective purchases.

Each of the above-named appellants who now assert ownership of these buildings endeavored, prior to his acquisition, to secure an express waiver of Century's contract obligation. Such a waiver was never obtained. After acquiring his building, however, each such appellant secured a resolution of the city of Seattle permitting the building to remain on site for a period of five years.

By action of the Seattle Board of Public Works, the government's use of the street area underlying these buildings terminated on October 28, 1953. Through the same city agency, the appellants who now claim these buildings were, on December 9, 1953, granted such street use. Each of the buildings in question has been altered so as to comply

---

3.  The government subsequently terminated its use as of June 30, 1956.

with the requirements of the Seattle building code.

The government instituted this action on October 4, 1954. After a trial, findings of fact favorable to the government were entered. Based thereon, conclusions of law were entered, in which it was held that the government was entitled to a decree of specific performance enforceable against all appellants. It was also held that the government was entitled to damages from all appellants, to be measured by the net revenues they had received from the rental of the buildings. The court determined that an accounting would be required to enable the court to fix the amount of damages to be awarded. In conformity with these conclusions, an order was entered referring the matter to a special master for an accounting and report. The master's supplemental report was later approved by the trial court.

Thereafter, supplemental findings of fact were entered. It was found that the government had not proved that it had paid the future ascertainable installments of just compensation which it was obligated to pay to entitle it to continued exclusive possession of the tracts in question. Because of this, the court found that the government had not fully sustained its burden of proving its continued exclusive right to possession of the land in question.

The court further found that the present and only estate in the land now claimed by the government would expire on July 1, 1956, and that the government had no intention of renewing or extending its estate. Appellants who now claim the buildings would then, the court found, have exclusive possession of the land. In view of these circumstances, the court found that the government was not entitled to specific performance. It was further found that it would be more just and equitable to limit the government's relief to monetary damages based on "fair, reasonable, and just compensa-

tion . . . for their [defendants] failure to remove and clear the sites of and for their wrongful commercial use of, said buildings. * * *"

Based on the supplemental report of the special master, it was found that the amount to which the government was entitled by way of damages, under this theory, was $5,937.13 from Virgil J. Pague and Century, jointly and severally; $3,709.31 from Barnett and Owens, jointly and severally; and $2,432.59 from Ester. These sums represented the net revenue received by the respective appellants from rental of the buildings, as determined by the special master. It was found that the special master was entitled to a reasonable fee and expenses in the sum of $2,583, three fourths of which should be paid by appellants, jointly and severally. Conclusions of law and a judgment consistent with the findings and supplemental findings were entered on April 26, 1956.

We turn first to the questions presented by the appeal of Barnett, Owens, and Ester.

The judgment against these three was not intended as an award of damages for breach of contract, since they were not privy to the contract. The theory of the award against them as indicated by what has been said above, is that they were amenable to a decree of specific performance, but that, because the government had not proved its continued exclusive right to possession of the land, it would be more equitable to allow damages only, to be measured by the net rentals these appellants had received.

There are at least two reasons why the judgment against Barnett, Owens, and Ester cannot be sustained on this theory. One of these is that, since they were not privy to the contract, they were no more amenable to specific performance (and hence to an equitable substitute for specific performance) than they were to damages for breach of contract.[4]

4. An exception to this rule is sometimes applied in the case of contracts to purchase land. See Ebensberger v. Sinclair Refining Co., 5 Cir., 165 F.2d 803.

■ The other reason why the judgment against Barnett, Owens, and Ester cannot be sustained on this theory has to do with the measure of damages which was applied. A monetary award may be made in an action brought for specific performance, either by granting an alternative prayer for damages for breach of contract (Gulbenkian v. Gulbenkian, 2 Cir., 147 F.2d 173, 158 A.L.R. 990), or to provide necessary supplemental relief in addition to a decree of specific performance (Daniels v. Brown Shoe Co., 1 Cir., 77 F.2d 899).

The award here made against these three appellants was not and as we have seen could not have been, based on breach of contract. Nor was the award intended as supplemental relief in addition to a decree of specific performance, since no such decree was entered.

■ It may be that the power to grant supplemental monetary relief in such actions includes the power to grant substituted monetary relief. But if so, and despite the broad discretionary powers lodged in a court of equity,[5] the measure of the award must still accord with some recognized standard. Here, the award was not based upon expense incurred or damages sustained by the government, or upon the reasonable rental value of the land while appellants were using it for commercial purposes. Instead, the award was based upon the net rentals received by appellants from their own buildings during the time the government had the right of possession of the land. An award on this basis, entirely disassociated from the principle of compensatory damages, is not sustainable on the theory adopted by the trial court.

■ The government urges, however, that in any event the award can be sustained on the theory of constructive trust. Angle v. Chicago, St. Paul, Minneapolis and Omaha Ry. Co., 151 U.S. 1, 14 S.Ct. 240, 38 L.Ed. 55, is cited as authority for this proposition. In that case, the defendant was declared a trustee ex maleficio in respect to certain property, upon a showing that the property had been acquired through fraudulent inducement to breach a contract.

There is, in our case, no proof or finding that the conduct of Barnett, Owens, or Ester was fraudulent in any respect. Nor is it shown or found that they did anything to induce Century to breach its contract. The most that is shown is that Barnett, Owens, and Ester knew of the contract, and of its breach, at the time they acquired their interests in the lands and buildings. Such a showing provides no basis for the imposition of a constructive trust.

■ Other theories advanced by the government include trespass, unjust enrichment, and quasi contract.

The awards against Barnett, Owens, and Ester were not made of any of these theories. Nor did the amounts awarded conform to the measure of damages appropriate under any of these theories.

It is nevertheless true that the complaint is broad enough to sanction damages on the theory of trespass or an implied contract to pay the reasonable rental value of the lands. It is possible that there may have been such a trespass, or the existence of circumstances from which a contract to pay the reasonable rental value of the lands may be implied.

This would not be true if the government did not have the exclusive right of possession of the land during any of the time when these appellants owned the houses. Barnett, Owens, and Ester argue that the trial court so held in its supplemental findings of fact.

We are not certain that this is the purport of the supplemental finding relative to exclusive right of possession. This finding was made only in connection with the question of whether specific performance should be ordered. With regard to this, only the government's immediate right to exclusive possession at the time the matter was be-

5. See Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293.

fore the court was important. It may be that the government was not prompt in completing its payments for previous months or years. But, if such payments were ultimately made, the government's exclusive right of possession during such period, at least as against these appellants, would seem to be established.

In our view, justice therefore requires that the judgment as to Barnett, Owens, and Ester be reversed and the cause remanded to the trial court. Upon remand, the trial court may determine the question of liability on the theory of trespass or implied contract to pay reasonable rental, either by construing the findings in the record or by proceeding to another trial ,as may be thought proper. If recovery is warranted on either of these theories, it should not include any rental value of the buildings, but may otherwise include any actual expense incurred or monetary damages sustained by the government.

This brings us to the questions presented by the appeal of Century and Pague.

For some of the reasons already stated, the judgment, in its present form, is not sustainable as to them. If damages may be awarded as an equitable substitute for specific performance, they must be measured on a different basis than that employed by the trial court.

But Century was a contracting party, and, under the findings clearly breached its contract to remove the buildings from the sites.[6]

■ Century argues, however, that because of certain terms of the contract, the government is, at most, entitled only to reimbursement for expenses incurred by reason of Century's breach. The company also argues that damages may not be awarded by a court because there has been no determination of damages by the contracting officer, as provided in the contract.[7]

Both of these contentions were considered and rejected in Aerial Lumber Co. v. United States, 9 Cir., 239 F.2d 906.

We hold that, as to Century, the judgment should be reversed and the cause remanded for a trial on the issue of damages only, arising by reason of its breach of contract. The measure of such damages would appear to be the same as indicated above with respect to Barnett, Owens, and Ester.

Pague's appeal presents additional questions. Under the judgment, damages in the sum of $5,937.13 were awarded against him and Century, jointly and severally. It was therefore apparently the view of the trial court that Pague was liable for the same reason that Century was liable, viz., because he had contracted to remove the buildings and clear the sites.

The original bid to buy and remove the buildings was made on Pague's behalf. He was also one of the incorporators of Century. He was not, however,

6. The government states in its brief, for the evident purpose of sustaining the judgment in its present form, that this is not a legal action for breach of contract, but is a proceeding seeking equitable relief. Examination of the complaint, however, indicates that both kinds of relief were sought.

7. The contract provisions in question read as follows:

"* * * The Purchaser is liable for any expense incurred by the Government as a result of his failure to abide by the terms of this sale, including the removal of the units sold hereunder within the time stated herein and leaving the site in a satisfactory condition. The Purchaser shall be liable for the full amount of damages determined by the Contracting Officer to have been occasioned by his failure to comply with provisions of this sale, whether or not such damages are secured by the performance security."

"* * * In the event the Purchaser fails to complete the removal and clean-up operations within such period of time, the Government may take possession of any property still on the site, destroy and otherwise dispose of it, and may charge the Purchaser with the cost of removing the dwellings and cleaning up the site without crediting the Purchaser with the salvage value of the material or construction work removed."

one of the contracting parties. The findings and conclusions entered by the trial court do not indicate the basis on which it was held that Pague was liable in damages. There was no finding that he is the alter ego of Century.

From what has just been said, it is plain that Pague is not liable on the theory of breach of contract. It would appear, however, that Pague is in about the same position as Barnett, Owens, and Ester, with respect to possible liability on the theory of trespass or implied contract to pay reasonable rental. The judgment against Pague must therefore be reversed and the cause remanded for further proceedings similar to those which have been specified as to Barnett, Owens, and Ester.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.