**UNITED STATES AIR CONDITIONING CORPORATION**

v.

**Frank FOGEL, Shirley Fogel, Rhawn Realty, Inc., Harry Fogel and Beatrice Fogel.**

**Civ. A. No. 25866.**

United States District Court
E. D. Pennsylvania.

Opinion and Preliminary Injunction
April 15, 1959.

Harold E. Kohn, Philadelphia, Pa., for plaintiff.

Arlin M. Adams, Philadelphia, Pa., for Frank and Shirley Fogel.

Irwin Paul and Alfred M. Klein, Philadelphia, Pa., for Rhawn Realty, Inc., Harry Fogel and Beatrice Fogel.

VAN DUSEN, District Judge.

### I. History of the Case

On January 27, 1959, a temporary restraining order was entered, restraining Rhawn Realty, Inc. (hereinafter called "Rhawn"), as landlord, from (a) claiming any acceleration of rent due under a lease dated January 6, 1956, for failure to pay the monthly rent and (b) confessing judgment under said lease on condition that the plaintiff, as lessee by assignment, make all payments when due under the mortgage, pay all taxes and similar charges, and pay the monthly rent when due into the registry of the court. The affidavit filed in support of the motion for this order (Document No. 2) alleged that the above-named defendants (Rhawn, Harry Fogel and Beatrice Fogel) were indebted to plaintiff in the amount of $95,377.14, with interest from July 17, 1958, the above-mentioned rent was being distributed by Rhawn to the Fogels (sole stockholders of Rhawn) who were distributing it for their own purposes, and ever since October 1958, Rhawn had "advised plaintiff that the entire amount of rent due under the lease, Exhibit A, would be accelerated and judgment entered on the confession of judgment clause of said lease unless each and every installment of rent was paid to the corporate defendant on the day due," even though plaintiff took the position that it was entitled to apply the monthly rent against defendants' obligation to pay it the above sum of over $95,000. The affidavit also contained this sentence (paragraph 9):

"If defendant corporation is permitted to confess judgment against plaintiff corporation as it has threatened, while being indebted to plaintiff in the amount of $95,377.14, it will seriously adversely affect the credit and business of the plaintiff to its irreparable damage."

A hearing on the request for a preliminary injunction was set for February 2, 1959, in the order of January 27. At this hearing, defendants acquiesced in the continuance of the temporary restraining order, which was provided for in an order entered on that date, and requested a continuance of the hearing on the application for the temporary restraining order. After several additional continuances requested by defendants, the hearing on the application for a preliminary injunction and on the above-mentioned motion of defendants was held on March 24, 1959. On the same date, the case was placed on the non-jury trial list, pursuant to order of plaintiff approved by the hearing judge. Counsel filed with the hearing judge Requests for Findings of Fact and Conclusions of Law on April 6, 1959.

Meanwhile, on April 3, 1959, a conference of counsel was held with the hearing judge in chambers at the request of counsel for plaintiff. At that time, certain procedures (including a non-jury trial of the claim stated in the first count [1] of the complaint, to be held May 18 by special listing, provided that the hearing judge denied defendants' demand that this count be tried to a jury) were agreed upon with the understanding that defendants' counsel had to secure approval of his tentative agreement to these procedures (see transcript of 4/3/59, being Document No. 18). By letters of April 6 and 8, attached hereto, counsel for defendants requested that

"this case proceed according to normal legal procedures and as if the meeting of April 3, 1959, had not taken place."

Answers to the complaint have been filed by all defendants.

## II. Findings of Fact

The hearing judge makes the following Findings of Fact:

1. The following paragraphs of the plaintiff's Requested Findings of Fact (Document No. 19) are adopted as Findings of Fact of the court: 1-4, 5, modified by inserting after the word "pay" in the fourth line the words "until 1965," 6-13, 14, with "$115,000" substituted for "$125,000", and 15-17.

2. The following paragraphs of the defendants' Requested Findings of Fact (Document No. 20) are adopted as Findings of Fact of the court: 1-7 and 8, with "between $400,000 and" substituted in line 3 after "is." [2]

3. When rent was withheld in October 1958 so that it might be applied against the claim for $95,377.14, with interest from July 17, 1958, the defendants' attorney threatened plaintiff on at least two occasions, " 'If Way doesn't pay that rent, I will have to exercise all the rights under the lease, enter judgment for the rent, proceed for ejectment, and do everything that I have to to protect Harry Fogel's interests.' " (N. T. 42-3). Under dates of October 16, 1958, and November 4, 1958, defendants' attorney wrote plaintiff as follows:

"* * * unless this request (for the October rent) is complied with, I shall have no alternative but to take such legal steps, as in my view may be necessary and proper to protect the interests of my clients." (Plaintiff's Exhibit D.)

"* * * unless the check covering the November net rent has been

---

1. Such special listing would have been possible because of the court's policy of advancing cases on the non-jury list where the parties waive special, detailed findings by the hearing judge. Such findings were to be waived "except insofar as counsel submit special written interrogatories which the hearing judge, as fact finder, would answer, similar to a special verdict," (p. 3 of Document No. 18).

2. N. T. 36-7.

received by November 10, (Mr. Fogel) will proceed to declare a formal forfeiture of the lease and take such steps as may be required to protect his interest and the interest of Rhawn Realty Co." (Plaintiff's Exhibit E.)

4. Exhibits A, B, and C to the complaint are true and correct copies of the documents, of which they purport to be copies, as signed by the parties to such documents.

5. All the rents due under the lease as of January 27, 1959, when the temporary restraining order was first issued, had been paid by plaintiff prior to that date.

### III. Discussion

In December 1955, plaintiff agreed in writing to buy all the stock of Jordon Refrigerator Company, Inc. (hereinafter called "Jordon"), as well as the stock of certain of Jordon's subsidiaries. As part of the settlement, made in January 1956, an indemnity contract (Exhibit C) was executed to indemnify plaintiff from loss on commitments of Jordon in connection with commercial paper of purchasers of Jordon's products held by a factor.

### Count I

■ This count alleges that ever since July 1958 defendants have owed it $95,-377.14 on the indemnity contract marked Exhibit C, but that they have consistently refused to pay this sum. Also, it alleges defendants' threat to confess judgment if the rent is set off against this alleged obligation and that plaintiff has no adequate remedy at law to prevent

such confession which would cause it irreparable damage. The answer alleges that the indemnity contract was entered into "through fraud, accident or mistake," but does not state " * * * with particularity * * * the circumstances constituting fraud or mistake * * *" as required by F.R.Civ.P. 9(b), 28 U.S. C.[3] Defendants offered at the hearing no evidence whatever of fraud, accident or mistake.

Rhawn has at all times made clear that it intends to confess judgment under this lease if necessary in its opinion (see Finding of Fact 3 and N. T. 72–3). The terms of the lease give Rhawn broad powers for the breach of any of the many covenants imposed on plaintiff, as lessee under the lease, including (a) the acceleration of the rent and of all other expenses assumed by plaintiff for the entire unexpired balance of the term of the lease (Section 14–b–1), (b) the right to enter, by breaking if necessary, the premises to levy upon, take possession of, and sell any and all goods at auction upon three days' notice served on plaintiff (Section 15–a), (c) the right to enter action and judgment in ejectment against plaintiff (Section 17), and (d) the confession of judgment for nonpayment of rent (Section 16).

■ Plaintiff has established that any acceleration of the rent and confession of judgment therefor would substantially injure its credit and impede its ability to get bank loans (see plaintiff's Request 16, adopted by Finding 1). Under such circumstances, plaintiff is entitled to an injunction to prevent the

---

3. The idemnity agreement (Exhibit C) provides that defendants "agree to indemnify and hold harmless (plaintiff) * * * against and from loss on any liability, contingent or otherwise, arising out of obligations, promises or commitments * * * now held by James Talcott, Inc., factor * * * provided that this indemnity is limited to a maximum of Three Hundred Thousand Dollars ($300,000.00) * * *." The second defense in the answer states "that the true agreement intended and entered

into between the parties was that these Defendants would indemnify the Plaintiff because of the liability of Jordon to Talcott (later assumed by Plaintiff), in an amount not to exceed $300,000, and that as soon as the first $300,000 had been received by Talcott on account of the customer's paper which it had held in its Jordon account (as of January 6th, 1956), then these Defendants would be excused from any further indemnity and their liability would forthwith cease."

distinct possibility (in view of defendants' past threats and their broad powers under the lease) that Rhawn would proceed in the state courts against it for confession of judgment. See Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 1951, 190 F.2d 217, 222; Conrad v. West, 1950, 98 Cal. App.2d 116, 219 P.2d 477; cf. Income Properties Investment Corporation v. Trefethen, 1930, 155 Wash. 493, 284 P. 782, 786.

■ The defendants contend that they are entitled to immediate payment of the rent when due, since the lien on the leased property created by the recording of the indemnity contract (Exhibit C) is sufficient to protect the plaintiff for any claim it may have for the amounts claimed under this count ($95,377.14, with interest from July 1958). There are authorities sustaining plaintiff's position that the dilution of the solvency of the obligors, [4] and hence its security for recovery of any amounts to which it is entitled under the indemnity agreement, is a ground for equitable relief. Cf. Fourth Ave. Amusement Co. v. Glenn, 6 Cir., 1953, 201 F.2d 600, 604; Waterman v. Mackenzie, 1891, 138 U.S. 252, 259, 11 S.Ct. 334, 34 L.Ed. 923.[5] Also, it has been held that a preliminary injunction will issue to enforce compliance with a contract's terms where defendant's violation of such terms is sought to be justified, as is true in this case, on the ground of fraud or mistake. See Perry v. Perry, 1951, 88 U.S.App.D.

C. 337, 190 F.2d 601; cf. Cold Metal Process·Co. case, supra.

■ After considering (a) the relative importance of the plaintiff's right to payment of the amount due under the indemnity agreement, (b) the failure of defendants to submit any evidence of fraud, accident or mistake at the hearing or to specify anywhere what are the circumstances supporting this claim, (c) the security granted to both parties through payment of the rents into the registry of the court, (d) the protection which can be made available to defendants by requiring plaintiff to pay Rhawn 6% interest per annum [6] on the rents which shall be paid into the registry of the court until a trial on the merits, (e) the irreparable nature of the injury flowing from denial of preliminary relief, and (f) the balancing of damage and convenience generally, the hearing judge has determined that plaintiff is entitled to a preliminary injunction, provided that all rents be paid into the registry of the court until final hearing and the plaintiff pay Rhawn monthly, beginning May 1, interest at the rate of 6% per year on the amount in the registry of the court during the previous month.[7] Also, the hearing judge will give the defendants another opportunity to present evidence in this matter after the current jury trial schedule ends in June, and prior to September 1, 1959, provided that prompt application for such a hearing is made.

■ The foregoing authorities make clear that plaintiff's claim in Count I

---

4. In this case, through distribution of the rents by Rhawn to its stockholders, who allegedly dissipate them for their own purposes.

5. There are also cases tending to support defendants' contention that there is not adequate showing of irreparable damage. See Wahlgren v. Bausch & Lomb Optical Co., 7 Cir., 1935, 77 F.2d 121.

6. The burden of such interest will ultimately be determined after the trial on the merits. Six per cent. is the legal rate of interest in Pennsylvania. As stated at the hearing, arrangements may be made to place the sum in the registry of the court in a savings fund account which will produce 3% interest. Since the record discloses that the rent payments are being distributed to the stockholders of Rhawn (Harry Fogel and Beatrice Fogel) in repayment of a debt of $115,000 the right to such rent is essentially a capital investment of these stockholders and payment of 6% interest will give them a better than average current return on such an investment.

7. The initial interest payment shall be based on the amounts in the registry of the court from time to time from February 1 to April 30, inclusive.

and the relief requested in the complaint which is referrable to that count present issues which are basically equitable in character and, hence, defendants are not entitled to a jury trial on this count. See Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 1943, 137 F.2d 62, 65,[8] certiorari denied 1943, 320 U.S. 777, 64 S.Ct. 92, 88 L.Ed. 467; Canister Co. v. Leahy, 3 Cir., 1950, 182 F.2d 510, 513. Equitable relief is clearly required in this case to prevent a multiplicity of suits. Also, in addition to the Canister Co. case, supra, the federal courts have consistently recognized that an equity court may award damages as well as give equitable relief where equitable relief is required. See Gulbenkian v. Gulbenkian, 2 Cir., 1945, 147 F.2d 173, 176, 158 A.L.R. 990; cf. Huntress v. Huntress' Estate, 7 Cir., 1956, 235 F.2d 205, 207, 61 A.L.R.2d 682; Altoona Electrical Engineering & Supply Co. v. Kittanning & F. C. St. R. Co., C.C. W.D.Pa., 1903, 126 F. 559, 560–561; "Equitable Clean-Up and The Jury," by A. Leo Levin, Esq., 100 Pa.L.Rev. 320 (1951).[9]

Furthermore, if plaintiff is forced to try its case to a jury, it will have to wait over two year, whereas if it is tried to the court, it will be reached for trial on the non-jury list in approximately half that time. The Supreme Court of the United States has stated that a chancellor must consider, among other things, the condition of the court calendar where an objection is made to equity jurisdiction, using this language in American Life Ins. Co. v. Stewart, 1937, 300 U.S. 203, 216, 57 S.Ct. 377, 380, 81 L.Ed. 605:

> "There would be many circumstances to be weighed, as, for instance, the condition of the court calendar, whether the insurer had been precipitate or its adversaries dilatory, as well as other factors. In the end, benefit and hardship would have to be set off, the one against the other, and a balance ascertained."

For the foregoing reasons, paragraphs 1 and 2 of the above-mentioned motion (Document No. 10) will be denied.[10]

### Count II

This count seeks relief against Harry Fogel, Beatrice Fogel, Frank Fogel and Shirley Fogel, defendants, for knowingly and wilfully breaching and violating warranties, guarantees and covenants in a written agreement of December 17,

---

8. In the Ettelson case, supra, 137 F.2d at page 64, the court made clear, " * * * the question whether an issue of fact is to be tried by a court or by a jury is considered one of procedure, and governed by the internal law of the forum."

9. Cf. Sayre Borough v. Waverly, Sayre & Athens Traction Co., 1921, 270 Pa. 412, 414, 113 A. 424, where the court said, "Equity * * * having obtained jurisdiction * * * will, to prevent a multiplicity of suits, grant complete relief by ordering such company to pay the loss its failure of performance caused the municipality." Similarly, in Patterson v. Glassmire, 1895, 166 Pa. 230, 31 A. 40, 45–46 a master's report containing this language was affirmed per curiam by the Supreme Court of Pennsylvania: "In this country it is now generally accepted that a court of equity has power to decree compensation, as incidental to other relief (Bisp.Eq. § 478; Story, Eq. Jur. § 794),—not, indeed, as damages, in the sense in which the law gives them, but as a substitute for damages (Root v. Railway Co., 105 U.S. [189] 215 [26 L.Ed. 975]). By some the power is based upon the necessity of preventing a multiplicity of suits (Allison's Appeal, 77 Pa.St. [221] 227); by others, from the necessity of doing complete justice as between the parties (Nagle v. Newton, 22 Grat. [814] 821). * * * in view of the changes in the course of procedure in equity since Lord Eldon's day, and the present disposition, as enunciated in all the decisions, to determine by the same proceeding all the rights in the cause, the master apprehends that a bill for an account would now substitute the method down by Lord Eldon as the usual course. 'When a court of equity has once acquired jurisdiction, it will retain it, in order to satisfy all the just requirements of the case between the parties in respect to the subject-matter.' "

10. The briefs submitted by the parties are attached.

1955, by plaintiff to purchase the outstanding stock of Jordon and the stock of certain of Jordon's subsidiaries from these defendants. These warranties, guarantees and covenants concerned the financial condition of Jordon and plaintiff claims that the balance sheet as of October 31, 1955, presented to it was inaccurate in many respects. Plaintiff claims, in this connection, money damages in the amount of $364,184.93 for items summarized as follows:

Undisclosed liabilities and accounts payable of Jordon (paragraph 25 of complaint)     $ 48,498.69

Fictitious assets of Jordon or assets overstated in excess of their actual and fair value (paragraph 26 of complaint)     26,112.00

Worthless and uncollectible accounts receivable of Jordon or accounts receivable of Jordon against which there were off sets or counterclaims (paragraph 27 of complaint)     281,981.84

Personal obligations of defendants charged to Jordon (paragraph 29 of complaint)     7,592.40

The defendants are entitled to a jury trial on the items summarized above, described in paragraphs 25 to 27 and 29 of the complaint, and these claims will be severed for purposes of trial from the balance of the complaint. Also, they will be placed on the jury trial list on order of any party, submitted to the hearing judge for approval.

Count II of the complaint also requests that provision be made to protect plaintiff against excess contingent liabilities in the amount of $250,600, which defendants have refused to pay, in whole or in part, as further explained by paragraph 28 of the complaint, reading as follows:

"28. Said Balance Sheet also represented that the maximum contingent liability of Jordon and subsidiaries at October 31, 1955 did not exceed $540,000. Defendants knew, however, that said contingent liabilities were actually greater than $540,000 by at least $250,600, which contingent liabilities were in no way reflected on the Balance Sheet. A list of the actual contingent liabilities of Jordon are set forth in Exhibit 'H' attached hereto and made a part hereof."

Exhibit H to the complaint shows that these contingent liabilities include the discounted paper of the Penn-Del Farms group, to satisfy which plaintiff paid to James Talcott, Inc. $95,377.14. On the present state of the record,[11] it would appear that plaintiff may well be entitled to some equitable relief in order to prevent these four individual defendants from dissipating their assets in such a way that plaintiff has no method

11. Counsel are in apparent agreement that if the claim contains basic issues which were tried to the court prior to the adoption of the Federal Rules of Civil Procedure, such issues shall be tried to the court. See Ettelson v. Metropolitan Life Ins. Co., supra, 137 F.2d at page 65; Canister Co. v. Leahy, supra, 182 F.2d at page 513; Fraser v. Geist, D.C. E.D.Pa.1940, 1 F.R.D. 267, 268–269; Bendix Aviation Corporation v. Glass, D.C.E.D.Pa., 1948, 81 F.Supp. 645; cf. Orenstein v. United States, 1 Cir., 1951, 191 F.2d 184; 51 Mich.L.Rev. 1100–1103.

of realizing any losses it may sustain by reason of these contingent liabilities which allegedly were not disclosed to it. Under these circumstances, no severance of the claim stated in paragraph 28 of the complaint for purposes of trial to a jury will be made at this time, without prejudice to the right of these four defendants to renew their motion for transfer of the claim stated in paragraph 28 to the jury trial list for trial with the claims covered by paragraphs 25 to 27 and 29 of the complaint if, subsequently, the record should justify such action.

## IV. Conclusions of Law

The hearing judge makes the following Conclusions of Law:

1. The court has jurisdiction over the parties and the subject matter.

2. The hearing judge adopts paragraphs 1 to 3 of the Conclusions of Law requested by plaintiff.

3. The conclusions of law contained in the foregoing Discussion are adopted as Conclusions of Law of the hearing judge.

4. Plaintiff is entitled to the preliminary injunction being issued today.

All requests for Findings of Fact and Conclusions of Law which are inconsistent with the foregoing are denied.

## Preliminary Injunction

And Now, April 15, 1959, in view of the History of the Case, Findings, Discussion and Conclusions filed earlier today, It Is Ordered, until final hearing and final judgment, or further order of this court, that

1. Defendant Rhawn Realty, Inc., its assignees, agents and all persons acting for it or on its behalf, are barred from accelerating or claiming any acceleration of rent under the lease between Rhawn Realty, Inc. and Jordon Refrigerator Company dated January 6, 1956, covering premises 7900 Tabor Road, Philadelphia, liability under which was assumed by plaintiff under date of January 6, 1956, for failure to pay the monthly instalment of rent in the amount of $1,333.33 provided for in said lease to be paid to Rhawn Realty, Inc., and from confessing judgment under said lease upon the following conditions:

(a) That plaintiff shall pay when due to Equitable Life Assurance Society of the United States, mortgagee, the mortgage interest and principal instalments provided for in said lease;

(b) That plaintiff shall pay to the City of Philadelphia when due all Philadelphia Real Estate Taxes and Water and Sewer Rents on said property provided for in said lease;

(c) That plaintiff shall pay the aforesaid monthly instalments of rent in the amount of $1,333.33 on the first day of each month into the registry of this court, or into an escrow account in a mutual savings bank in the City of Philadelphia to be agreed upon by counsel for plaintiff and defendants Rhawn Realty, Inc., Harry Fogel and Beatrice Fogel, subject to withdrawal and payment as may be directed by further order of this court; and

(d) That plaintiff shall pay on May 1, 1959, to Rhawn Realty, Inc., interest computed at the rate of 6% per annum on amounts paid into the registry of the court in this matter between January 30, 1959, and April 30, 1959, covering the period such amounts have been in such registry, and plaintiff shall also pay, on or before the first day of each succeeding month, to Rhawn Realty, Inc., interest computed at the rate of 6% per annum on amounts in such registry, or in the above-described escrow account, during the preceding month.

2. The bond in the amount of $1,000 previously posted by the plaintiff shall be continued.